The AETNA CASUALTY AND SURETY CO., Plaintiff–Defendant–Appellant–Cross–Appellee,

v.

ANIERO CONCRETE CO., INC., Plaintiff–Appellee—Cross–Appellant,

General Accident Insurance Company of America, Defendant–Counter–Claimant–Appellee,

New York City School Construction Authority, Defendant–Counter–Claimant–Cross–Appellee,

Kreisler Borg Florman General Construction Company, Acrom Construction Services Co., Inc., Construction Managers, A Joint Venture, David M. Pharis, S.T. Hudson, doing business as Hudson International, Hudson International, Crevani Bros. Realty, Crevani Concrete Construction Co., Inc., Crevani Farms 1979 Trust Agreement and Vertolomo's, Inc., Defendants.

Docket Nos. 04–0843–CV(L), 04–1162–CV(XAP).

United States Court of Appeals, Second Circuit.

Argued: Jan. 11, 2005.

Decided: Feb. 1, 2005.

Benjamin D. Lentz, Torre, Lentz, Gamell, Gary & Rittmaster LLP, Jericho, NY, for Plaintiff–Defendant–Appellant–Cross–Appellee.

John M. Agnello (James E. Cecchi and Lindsey H. Taylor, on the brief), Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart & Olstein, Roseland, NJ, for Plaintiff–Appellee–Cross–Appellant.

Vincent J. Zichello, Zichello & McIntyre, LLP, New York, NY, for Defendant–Counter–Claimant–Appellee.

Fay NG (Pamela Seider Dolgow; Michael A. Cardozo, Corporation Counsel, on the brief), Office of the Corporation Counsel of the City of New York, New York, NY, for Defendant–Counter–Claimant–Cross–Appellee.

Before: KEARSE, CABRANES and SACK, Circuit Judges.

PER CURIAM.

This case, brought in the United States District Court for the Southern District of

New York (Charles S. Haight, Jr., *Judge*) under the Court's diversity jurisdiction, arises out of efforts to renovate the Morris High School in Bronx, New York. The District Court held that a contract to complete the renovation—the "Completion Agreement" memorialized on March 18, 1994 by The Aetna Casualty and Surety Company ("Aetna") and Aniero Concrete Company, Inc. ("Aniero")—was invalid due to an unsatisfied condition precedent. On appeal, Aetna disputes the District Court's conclusion. We affirm.

In 1992, the New York City School Construction Authority ("SCA") contracted with the P.J. Carlin Construction Company ("Carlin") to perform the Morris High School renovation. The SCA's arrangement with Carlin subsequently collapsed, leading Aetna, Carlin's surety, to solicit bids for completing the work. *See Aniero Concrete Co. v. N.Y. City Constr. Auth.*, 1997 WL 3268 (S.D.N.Y. Jan. 3, 1997). Aetna accepted Aniero's bid, and the two parties memorialized the Completion Agreement. *See id.* at *1. After "mobiliz[ing]" on the job site, Aniero claims to have discovered that it had been "given an inaccurate and misleading description of the work completed by Carlin." *Id.* at *1.

In December 1994, Aniero commenced this action, asserting tort and contract claims against, *inter alia*, Aetna and the SCA. Aetna subsequently filed an action against General Accident Insurance Company of America ("General"), Aniero's surety, in New York state court; that action was removed to federal court and consolidated with Aniero's action. On March 24, 1997, the SCA filed a counter-claim against Aniero and a cross-claim against Aetna. Further background facts, as well as the history of this litigation's motion practice, are set forth in detail in the District Court's Memorandum Opinions and Orders dated January 3, 1997 (reprinted below at Appendix A), *see id.*; February 27, 1997 (reprinted below at Appendix B), *see Aniero Concrete Co. v. N.Y. City Constr. Auth.*, 1997 WL 83308 (S.D.N.Y. Feb. 27, 1997); and March 30, 1998 (reprinted below at Appendix C), *see Aniero Concrete Co. v. N.Y. City Constr. Auth.*, 1998 WL 148324 (S.D.N.Y. Mar. 30, 1998).

In due course, on March 30, 1998, the District Court issued a Memorandum Opinion and Order addressing, *inter alia*, the parties' motions for summary judgment. *See id.* The Court concluded that the Completion Agreement was invalid due to an unsatisfied express condition precedent—the SCA's written consent to the assignment of the Carlin contract to Aniero. *Id.* Accordingly, the SCA's counter-claim against Aniero was dismissed because it was premised on the validity of the Completion Agreement. *Id.* Moreover, the Completion Agreement having been declared invalid, the District Court held that "the performance bond issued by General as security for the Completion Agreement is also a nullity." *Id.* The District Court thus dismissed Aetna's claims against General. *Id.* The Court further noted that Aniero and General had agreed not to press their claims if the Completion Agreement were held invalid; the Court, therefore, regarded as moot any motions seeking the dismissal of Aniero's or General's actions, as well as General's own cross-motion for summary judgment in its favor.[1] *Id.* On May 19, 1998, the District

---

1. In its Memorandum Opinion and Order of March 30, 1998, the District Court also granted Aniero leave to amend its pleadings to include a *quantum meruit* claim against Aetna. Aniero shortly asserted such a claim.

Following a bench trial, the District Court entered a judgment in Aniero's favor on the *quantum meruit* claim in the amount of over $3.5 million. *See Aniero Concrete Co. v. Aetna*

Court denied Aetna's motion for reconsideration.

On appeal, Aetna argues that the District Court incorrectly interpreted the Completion Agreement and that, in any event, the Completion Agreement was so ambiguous as to preclude summary judgment. Aniero cross-appeals, seeking to reinstate its claims if we reverse the District Court's judgment and hold that the Completion Agreement was valid.

For substantially the reasons stated in the District Court's Memorandum and Order of March 30, 1998, we affirm. We therefore need not reach the question raised by Aniero's protective cross-appeal, and we dismiss the cross-appeal as moot.

## APPENDIX A

ANIERO CONCRETE COMPANY, INC., Plaintiff,

v.

NEW YORK CITY CONSTRUCTION AUTHORITY; The Aetna Casualty and Surety Company; Kreisler Borg Florman General Construction Company; Acrom Construction Services, Inc.; Kreisler Borg Florman General Construction Company, Inc. and Acrom Construction Services, Inc., Construction Managers, a Joint Venture; David M. Pharis and S.T. Hudson d/b/a Hudson International, Defendants.

The Aetna Casualty and Surety Company, Plaintiff,

v.

General Accident Insurance Company of America, Defendant-Counterclaimant.

General Accident Insurance Company of America, Third-Party Plaintiff,

v.

New York City School Construction Authority; Kreisler Borg Florman General Construction Company, Inc.; Acrom Construction Services, Co., Inc.; Kreisler Borg Florman General Construction Company, Inc. and Acrom Construction Services Co., Inc., Construction Managers, a Joint Venture; David M. Pharis and S.T. Hudson d/b/a Hudson International; Aniero Concrete Co., Inc.; Crevani Construction Co., Inc.; Vertolomo's Inc.; Crevani Bros. Realty Co., Inc.; Crevani Farms 1979 Trust Agreement; Stephen G. Crevani, Jr. Trust Agreement; Stephen G. Crevani, Jr. Business Buy-Pass Trust Agreement; Stephen G. Crevani; and Stephen G. Crevan, Jr., Third-Party Defendants.

Nos. 94 Civ. 9111, 95 Civ. 3506.

Jan. 3, 1977.

## MEMORANDUM OPINION AND ORDER

HAIGHT, Senior District Judge.

This action is before the Court on a motion by defendant The Aetna Casualty and Surety Company ("Aetna"), to dismiss the complaint brought by Aniero Concrete Company, Inc. ("Aniero"), pursuant to Rule (12)(b)(6), or in the alternative for summary judgment. Defendant David M. Pharis and S.T. Hudson d/b/a Hudson International ("Hudson") [1] also moves to dismiss Aniero's complaint, as well as that brought by third-party plaintiff General

*Cas. & Sur. Co.,* No. 94 Civ. 9111 (S.D.N.Y. Feb. 3, 2004) (final judgment); *see also Aniero Concrete Co. v. Aetna Cas. & Sur. Co.,* 301 F.Supp.2d 302 (S.D.N.Y.2004). Because Aetna does not challenge the *quantum meruit* judgment except to ask that it be vacated if we conclude that there was a valid contract, and because we reach no such conclusion, we intimate no view as to the merits of the Court's determination of Aetna's liability to Aniero in *quantum meruit.*

1. There is some dispute between the parties as to the proper name for this defendant. *See infra.* As discussed below, the resolution of the instant motions does not appear to turn on this question.

Accident Insurance Company of America, Inc. ("General"), under Rule 12(b)(6). For reasons set forth herein, Aetna's Rule 12(b)(6) motion is converted into a summary judgment motion, and is granted in part and denied in part. Hudson's Rule 12(b)(6) motion is also granted in part and denied in part. The plaintiffs' claims of fraudulent inducement, fraudulent concealment, negligent misrepresentation, and rescission on the ground of unilateral mistake are dismissed under Fed.R.Civ.P. 9(b), with leave to amend. The parties have made various other applications, which are addressed below.

## BACKGROUND

The instant action, brought under this Court's diversity jurisdiction,[2] arises out of the collapse of a contractual arrangement for the renovation of Morris High School in the Bronx ("the Project" or "the Morris Project"). Aniero's complaint paints the following portrait of the events that led to the instant suit:

On July 1, 1992, defendant New York City School Construction Authority ("SCA") contracted with the P.J. Carlin Construction Company ("Carlin") for the modernization of Morris High School ("the Carlin Contract"). After little more than a year, Carlin was terminated from the Project, and its surety, Aetna, was called in to complete the work. Aetna solicited bids for this task, and its construction consultant, defendant Hudson, prepared materials describing the nature of work done by Carlin, and that remaining to be finished. Among the documents provided by Hudson were Carlin's Request for Payment No. 15, which set forth the approved work performed by Carlin as of September 30, 1993 and the dollar value thereof; the Change Order List, which contained 43 approved change orders,[3] and the value of change order work completed by Carlin; and the Punchlists, which detailed the defective work that the completion contractor would need to remedy (collectively "the Project Documents"). Complaint ¶ 31.

Aniero submitted a bid of $18,800,000, which was "ultimately" accepted by Aetna. Complaint ¶¶ 29, 32. The parties memorialized this agreement in a contract signed March 18, 1994 ("the Completion Agreement"). The Completion Agreement assigned Aetna's interest under the Carlin Contract to Aniero.

---

**2.** Plaintiff Aniero is a New Jersey corporation. Defendant Aetna is a Connecticut corporation, Hudson has its principal place of business in Pennsylvania and, according to Aniero's uncontested allegations, the remaining defendants are domiciled in New York. Although General is also a Pennsylvania corporation, consolidated cases do not lose their separate identity, *Garber v. Randell*, 477 F.2d 711, 716 (2d Cir.1973) (citing *Johnson v. Manhattan Ry. Co.*, 289 U.S. 479, 497, 53 S.Ct. 721, 77 L.Ed. 1331 (1933)), and thus diversity is evaluated in terms of each individual case. *Continental Airlines, Inc. v. Goodyear Tire & Rubber Co.*, 819 F.2d 1519, 1523 n. 1 (9th Cir.1987); *Webb v. Just in Time, Inc.*, 769 F.Supp. 993, 996 (E.D.Mich.1991) (in a consolidated case, "when determining whether diversity of citizenship exists, the claims

must be addressed separately ...."). *See* 9 Wright, Miller & Kane, *Federal Practice and Procedure* § 2382 (1990). Similarly, a third-party complaint does not require an independent jurisdictional basis when diversity of citizenship exists between the original parties. *Agrashell, Inc. v. Bernard Sirotta Co.*, 344 F.2d 583 (2d Cir.1965); *Huberman v. Duane Fellows, Inc.*, 725 F.Supp. 204, 205 (S.D.N.Y. 1989).

**3.** A change order is a direction by the owner to the contractor to undertake work not contemplated by the original contract. When a request for such an order is approved, it constitutes an acknowledgment by the owner that it will compensate the contractor for the additional work. Aetna's Mem. at 8 n.3.

Aniero mobilized on the site on March 21, 1994. It soon discovered, however, that the Project Documents had given an inaccurate and misleading description of the work completed by Carlin, and that left to be done. The defects in Carlin's work, moreover, could not previously have been discovered by a walk through of the Morris site. As a result, Aniero commenced the instant action on December 20, 1994, and ceased work on the Project two days later. In its complaint, Aniero brought claims against Hudson and Aetna for fraudulent concealment, fraudulent inducement, and negligent misrepresentation. Aniero also stated claims against Hudson for negligence and breach of Hudson's contract with Aetna, to which Aniero purported to be a third party beneficiary, and against Aetna for breach of contract, anticipatory breach, rescission on the grounds of unilateral or mutual mistake, and tortious interference with contract. In support of its breach of contract claim, Aniero alleged, without detail, that Aetna had failed to pay money owed for work performed by Aniero under the Completion Agreement. Complaint ¶ 135. The tortious interference claim was based on the assertion that Aetna interfered with the performance of the Carlin Contract by demanding that it receive payment for change order work. Complaint ¶ 170. Aniero also raised a variety of similar causes of action against SCA and a party contracted by SCA to perform construction management services, the joint venture known as Kreisler Borg Florman General Construction Company, Inc. and Acrom Construction Services Company, Inc. ("KBF"). Finally, Aniero brought a claim of conspiracy against all the defendants.

Aetna now moves to dismiss Aniero's complaint or, in the alternative, for summary judgment. It supports its motion with affidavits by Aetna technical consultant Kevin Gillen and attorney Arthur Lambert, as well as various documents. The documents are appended to Lambert's affidavit, which contains no factual assertions. Gillen's affidavit is restricted entirely to a description of these documents, except in that it responds to Aniero's breach of contract claim. Gillen asserts that Aniero received an $850,000 mobilization advance, and was fully compensated on the first four requisitions for payment it submitted. Gillen Aff. ¶ 19. According to Gillen, Aetna did not pay the fifth and final requisition presented by Aniero because Aniero had abandoned the project. Gillen does not aver that the information contained in his affidavit derived from personal knowledge.

The documents presented by Aetna included the Carlin Contract, the Completion Agreement, and the materials setting forth Aetna's invitation for bids. The text of the Completion Agreement sheds light on the obligations undertaken by Aniero. With certain exceptions, the Agreement required Aniero to repair Carlin's non-conforming work. Completion Agreement ¶ 1–2 *in* Lambert Aff. ex. 9. The Agreement also contained the following clause ("the Waiver Clause"), whose construction is at the heart of the instant litigation:

Aniero represents that it has reviewed any and all data it deems necessary or material to any aspect of this agreement or the Construction Contract. Aniero further represents that it is fully and independently familiar with the current state of the Construction Contract and requisites of performance thereunder, and is not relying on Aetna regarding any fact or representation material to its entry into this agreement. Aniero hereby disavows any reliance upon any representation of fact or law by Aetna or

Carlin in entering into this Completion Agreement or accepting this assignment. Completion Agreement ¶ 18.

The bid materials, submitted in the name of Aetna "[b]y: Hudson International" and dated December 22, 1993, Lambert Aff. ex. 5A, contained similar warnings. The bid invitation stated that the submission of a bid would be "deemed a representation" that the bidder had verified all information contained in the contract documents, examined the Morris facilities, based its bid on its own specifications, and assumed all responsibility for defective work performed by Carlin. *Id.* Similarly, an information sheet cautioned bidders that they would be "responsible for determining the work completed to date as well as the balance remaining to be completed." Lambert Aff. ex. 5B ¶ 14. A third document stated that "[f]ailure of Bidder to … examine [the Bid Documents] and inform itself [with respect to conditions affecting the amount of its bid] shall be at its sole risk and no relief for error or omission will be given." Lambert Aff. ex. 5C ¶ 5.

In its response to Aetna's motion, Aniero submits an affidavit by the company's president, Stephen Crevani, which provides a far more detailed description of the bidding process that preceded the Completion Agreement than that contained in Aniero's complaint. According to Crevani, Aetna initially solicited bids for the completion of work at Morris High School in tandem with those for two other projects. Aniero submitted an unsuccessful bid for one of those projects in conjunction with

JCH Delta Contracting, Inc. ("Delta"), but made no proposal for the project at issue. Aff. ¶ 25. These assertions are supported in an affidavit by Delta's president, Dimitrios Hanjis. According to both Crevani and Hanjis, the bid materials included in Aetna's filing refer to this solicitation.[4]

Crevani maintains that three weeks after Aniero's and Delta's initial bid was denied, Hudson contacted Delta, stating that the situation at Morris was an "emergency," and asking that Delta and Aniero submit a bid for that project as soon as possible. Crevani Aff. ¶ 29. One week later, after receiving the Project Documents, Delta and Aniero submitted an $18,800,000 proposal.[5]

Representatives of Delta were also provided the opportunity to walk through Morris High School to review the project.[6] According to Hanjis, the tour, which was conducted by officials of SCA and KBF, lasted twenty to thirty minutes. Hanjis Aff. ¶ 22. Hanjis contends that during that time, the visitors were shown selective portions of the site, and, when they inquired about apparent errors made by Carlin, were told that all defects in Carlin's work were recorded on the Punch Sheets. *Id.* ¶ 23–35.

Hanjis also claims that Aetna failed to notify either Delta or Aniero that the bidder who had originally been chosen to finish the Morris Project, A.F.C. Enterprises ("AFC"), increased its bid by $7 million when it was given full access to the project site. *Id.* ¶ 34; *see also* Crevani Aff. ¶ 53–55. In supplemental filings, Aet-

---

**4.** This contention is borne out by the bid documents themselves, which clearly invite bids for three separate projects. *See* Lambert Aff. ex. 5A at 1.

**5.** Delta was ultimately disqualified by SCA, and Aniero agreed to take on the Project alone. Crevani Aff. ¶¶ 34–36.

**6.** Aniero's affidavits are vague as to whether this took place before or after the bid was accepted. *See* Hanjis Aff. ¶ 19; Crevani Aff. ¶ 32.

na disputes the truth of this last assertion on the basis of two letters it had received from AFC: one in which AFC requested clarification as to $2,826,634 in materials which had been excluded from its bid proposal on the mistaken assumption that they would be paid for by Aetna, and a second in which AFC stated that it had re-evaluated its proposal in light of its "understanding of how liability [would] be assumed by Aetna and the responsibility of the completion contractor with respect to subcontractor and vendor liabilities." Letter of Ruggiero to Lewis, Feb. 22, 1994. In response, Aniero points out that these filings do not explain all of the purported $7 million augmentation in AFC's bid.

Crevani's affidavit also elaborates further on Aniero's allegation that Aetna had breached its obligations under the completion agreement and had tortiously interfered with the Carlin Contract, to which Aniero had been assigned Aetna's rights. Crevani asserts that, although the Completion Agreement required Aetna to turn over to Aniero money paid by the SCA for extra work completed by Aniero pursuant to change orders, Aetna improperly withheld these funds. Moreover, Crevani maintains that Aniero has yet to be paid for work done from October through December, 1994, although payment for its October work was approved by SCA. Crevani Aff. ¶¶ 60–65.

In addition to filing its motion in this action, Aetna also commenced suit in the Supreme Court of New York, Nassau County against Aniero's surety, General. General removed the case to the Eastern District of New York, and filed an answer, counterclaim and third-party complaint. The counterclaim and third-party complaint essentially replicates Aniero's pleadings, while also raising claims for indemnification against Aniero and various other companies that had purportedly agreed to indemnify General for losses arising out of its surety for Aniero's performance of the Completion Agreement.

While Aetna's suit was pending in the Eastern District, General moved to intervene in the action before this Court, submitting a complaint that again mirrored that presented by Aniero. Although General acknowledged that it planned to request consolidation of the cases pending in the Eastern and Southern Districts, it sought intervention because the court rules governing its Eastern District action would not allow for the filing of an immediate motion for transfer, and General was "[c]oncerned that in the interim its interest [would] be impaired if this litigation proceeds without its involvement." General's Mem. in Support of Mot. to Intervene at 5–6. After General's motion to intervene was fully briefed, the Eastern District action was transferred to this Court, and I signed a consent order consolidating these cases. General noted, in a letter filed prior to the consent order, that the transfer of Aetna's suit might render its intervention motion moot. Letter of Andretta to Court, May 9, 1995, at 1.

General's filings did not represent the last of the motion practice in this case. Hudson, for its part, sought the dismissal of both Aniero's complaint and General's third party complaint. To the extent that the claims brought against Hudson duplicated those raised against Aetna, Hudson's arguments for dismissal replicate those presented by its co-defendant.

## DISCUSSION

Before I proceed to address each of the specific causes of action placed at issue by the instant motions, there are two preliminary matters whose determination is essential to the motion's disposition. First, I must determine what documents I may take into account in ruling on the Rule

12(b)(6) motions, or whether those motions may best be viewed as seeking summary judgment. Second, I must decide the extent to which the Waiver Clause is a bar to Aniero's claims. The parties agree that the substantive legal issues are governed by New York law.

## I. The Nature of Aetna's and Hudson's Motions

Aetna's motion seeks dismissal under Fed.R.Civ.P. 12(b)(6) or, in the alternative, summary judgment. Aniero contends that, because the motion calls for consideration of materials outside the pleadings, it should be decided as one seeking summary judgment, in accordance with Fed.R.Civ.P. 56. It further maintains, however, that summary judgment is unavailable to Aetna, as its motion is premature, unsupported by affidavits based on personal knowledge, and fails to demonstrate that there are no issues of material fact in dispute.

It is within the discretion of this Court to convert a motion filed under Fed.R.Civ.P. 12(b)(6) into one seeking summary judgment when matters outside the pleadings have been presented and accepted by the Court, and where all parties have been given a "reasonable opportunity" to present materials pertinent to the motion's disposition. *See* Fed.R.Civ.P. 12(b). Each of these elements is present here. Both Aetna and Aniero have submitted documentary evidence and affidavits alleging facts not contained in the four corners of the pleadings, and thus neither can claim to lack notice of the conversion. *See Groden v. Random House, Inc.,* 61 F.3d 1045, 1053 (2d Cir.1995); *In re G. & A. Books, Inc.,* 770 F.2d 288, 295 (2d Cir. 1985), *cert. denied,* 475 U.S. 1015, 106 S.Ct. 1195, 89 L.Ed.2d 310 (1986). Moreover, Aetna's motion states that it seeks summary judgment as an alternative. *See Nat'l Ass'n of Pharmaceutical Mfrs. v. Ayerst Lab.,* 850 F.2d 904, 911 (2d Cir. 1988)(fact that motion seeks summary judgment in the alternative is factor in determining if plaintiff had notice). Indeed, Aniero specifically requests that the Court construe Aetna's application as one brought under Fed.R.Civ.P. 56. Aniero's Mem. at 4–5.

Aniero's procedural challenges to Aetna's summary judgment application are unavailing. As to the timing of the motion, summary judgment may be sought at any time after a pleading is served. *Schwartz v. Compagnie General Transatlantique,* 405 F.2d.270, 273 (2d Cir.1968). While it is true that caution should be exercised in granting summary judgment when the non-moving party lacks relevant discovery, *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983), Aniero has not made a sufficient showing that this is the case here. Fed.R.Civ.P. 56(f) sets forth a specific procedure by which a party lacking information necessary to oppose a summary judgment motion may seek further discovery. Aniero has submitted no affidavit as required by this Rule, and has failed to make a specific proffer as to the discovery it would seek, beyond alleging generally that it has not had the opportunity to examine documents or conduct depositions. Aniero's Mem. at 8. In seeking a denial of summary judgment under Rule 56(f), however, "a bare assertion that the evidence supporting a plaintiff's allegation is in the hands of the defendant is insufficient . . . ." *Contemporary Mission, Inc. v. United States Postal Svc.,* 648 F.2d 97, 107 (2d Cir.1981). This is especially so for the motion at hand, the core issues of which concern the process which led to negotiation of the Completion Agreement and the plaintiff's opportunity to inspect the Project beforehand—facts to which Aniero would presumably have access.

Aniero's other procedural contentions are without merit. The two affidavits submitted in support of Aetna's motion are, concededly, inadequate. Lambert's affidavit makes no factual assertions whatsoever, while that filed by Gillen gives no indication as to whether the affiant has personal knowledge of the events to which he avers. *See* Fed.R.Civ.P. 56(e); *United States v. Bosurgi*, 530 F.2d 1105, 1112 (2d Cir.1976). Nevertheless, as Aniero has not moved to strike these affidavits, I may consider them in ruling on the instant motion. *See* 10A C. Wright and A. Miller, *Federal Practice and Procedure: Civil 2d.* § 2738, at 507–08 (1983). I also note that the primary outside document submitted by Aetna, the Completion Agreement, is integral to Aniero's complaint, and could be considered even if this motion were reviewed under Rule 12(b)(6). *See San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 808 (2d Cir.1996); *Int'l Audiotext Network, Inc. v. AT & T*, 62 F.3d 69, 72 (2d Cir.1995); *see also Decker v. Massey–Ferguson, Ltd.*, 681 F.2d 111, 113 (2d Cir.1982)(where "many of plaintiff's allegations of wrongdoing center upon" a document, the court may "properly refer to its contents"). Finally, although Aetna did not initially submit a statement of undisputed facts as required by Local Rule 3(g), it has now done so. Although the statement was not appended to the initial motion, as required by Local Rule, I see no reason to deny Aniero's motion on the basis of a procedural shortcoming that has now been remedied.

Having determined that Aetna's motion should be construed as one seeking summary judgment, I must apply the standards set forth in Fed.R.Civ.P. 56. Under that Rule, the moving party is entitled to summary judgment if the papers "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." On such a motion, "a court's responsibility is to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Coach Leatherware Co., Inc. v. AnnTaylor, Inc.*, 933 F.2d 162, 167 (2d Cir.1991)(citing *Knight v. U.S. Fire Insurance Co.*, 804 F.2d 9 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987)). The responding party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). "The nonmovant cannot 'escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts,' . . . or defeat the motion through 'mere speculation or conjecture.'" *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir.1990) (citations omitted). While the party resisting summary judgment must show a dispute of fact, it must also be a material fact in light of the substantive law. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In contrast to Aetna's motion, Hudson has submitted no outside documents and has explicitly stated that it is only seeking dismissal pursuant to Rule 12(b)(6). Hudson's Reply Mem. at 1. I note, however, that the rule to be applied makes no material difference for purposes of Hudson's motion. As discussed above, the documents before the Court that are relevant to that motion may be considered as integral to Aniero's complaint. Hudson contends that its motion should be considered without reference to Aniero's affidavits. I see no reason, however, to segregate the

facts before me in discussing the two dispositive motions at issue. While Aniero's affidavits, at times, flesh out the substance of its complaint, they are not contradictory thereto so far as the claims against Hudson are concerned. As I must grant a motion to dismiss unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations" in the complaint, *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984) (*citing Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)), the sharper focus provided in the affidavits does not render invulnerable any claims which would be subject to dismissal without their presence.

Finally, Hudson also seeks dismissal of General's claims. I will leave General's status for the end of this opinion, after I have resolved all motions brought against Aniero.

## II. The Waiver Clause

Aniero alleges, in support of its causes of action for fraudulent concealment, fraudulent inducement, and negligent misrepresentation, that it reasonably relied on false or misleading information contained in the Project Documents in deciding to enter the Completion Agreement. Similarly, Aniero's rescission claims are bottomed on the contention that it erred in believing that the Project Documents were accurate, and contracted to take on the Project as a result of this mistaken assumption. Both Aetna and Hudson contend that the Completion Agreement's Waiver Clause bars these claims.

The principles which govern a clause of this kind, under New York law, were first set forth at length in *Danann Realty Corp. v. Harris,* 5 N.Y.2d 317, 184 N.Y.S.2d 599, 157 N.E.2d 597 (Ct.App.1959). In *Danann,* the purchaser of a lease brought an action against the seller for fraud, alleging that the seller had induced it to enter the transaction through false representations as to the building's operating expenses and profitability. The defendant moved for dismissal, citing the following clause in the contract:

> The Purchaser has examined the premises agreed to be sold and is familiar with the physical condition thereof. The Seller has not made and does not make any representations as to the physical condition, rents, leases, expenses, operation or any other matter or thing affecting or related to the aforesaid premises, except as herein specifically set forth, and the Purchaser hereby expressly acknowledges that no such representations have been made, and the Purchaser further acknowledges that it has inspected the premises and agrees to take the premises 'as is.'

*Id.* at 601. A second clause in the agreement reiterated this provision in similar terms.

The New York Court of Appeals noted that a "general and vague merger clause" is insufficient to warrant exclusion of parol evidence showing fraud. *Id.* When a disclaimer of reliance is as specific as the one before the *Danann* court, however, it "destroys the allegations in the plaintiff's complaint that the agreement was executed in reliance upon . . . contrary oral representations." *Id.* at 602. A contrary result, the court found, would allow the plaintiff to "deliberately misrepresent" its purported non-reliance in the contract, and would make it impossible for "two businessmen dealing at arm's length to agree that the buyer is not buying in reliance on any representations of the seller as to a particular fact." *Id.* at 604.

The venerable principles established in *Danann* remain the law of New York State. Thus, when a contract contains an

"omnibus statement" disclaiming that any representations outside the contract were made, it will not preclude a claim for fraud. *Manufacturers Hanover Trust Co. v. Yanakas,* 7 F.3d 310, 315 (2d Cir.1993) (citations omitted). When, however, the contracting party disclaims "the existence of or reliance on specified representations," it will not be allowed to claim it entered the contract in reliance thereon. *Id.* For a contract term to be sufficiently specific under this standard, there need not be a "precise identity between the misrepresentation and the particular disclaimer." *Grumman Allied Industries, Inc. v. Rohr Industries, Inc.,* 748 F.2d 729, 735 (2d Cir.1984). Rather, "[t]he *Danann* rule operates where the substance of the disclaimer provisions tracks the substance of the alleged misrepresentations, notwithstanding semantical discrepancies." *Id.* The specificity requirement is further relaxed when the contracting parties are "sophisticated business people," and the disclaimer clause is the result of negotiations between them. *Citibank, N.A. v. Plapinger,* · 66 N.Y.2d 90, 495 N.Y.S.2d 309, 311–12, 485 N.E.2d 974 (Ct.App.1985). Thus, in *Citibank,* the Court enforced a guarantee of corporate indebtedness which recited that it was absolute and unconditional regardless of its enforceability or any available defense, although the Court acknowledged that the term did not rise to the level of specificity described in *Danann.* *Id.* at 312. Finally, there is one instance in which even an explicit waiver will not be given effect—"when the facts are peculiarly within the knowledge of the party invoking the disclaimer." *Banque Arabe Et Internationale v. Md. Nat. Bank,* 57 F.3d 146, 155 (2d Cir.1995). *See also Stambovsky v. Ackley,* 169 A.D.2d 254, 572 N.Y.S.2d 672, 677 (1st Dep't 1991); *Yurish v. Sportini,* 123 A.D.2d 760, 507 N.Y.S.2d 234, 235 (2d Dep't 1986).

Turning to the case at hand, I concede that the Waiver Clause in the Completion Agreement presents a close question. Nonetheless, I hold that it is sufficiently specific to fall within the ambit of *Danann.* In reaching this conclusion, I find instructive the holding of *Galvatron Industries Corp. v. Greenberg,* 96 A.D.2d 881, 466 N.Y.S.2d 35 (2d Dep't 1983), cited by the Second Circuit in *Grumman* as an exemplar of New York law. *See* 748 F.2d at 735–36. In *Galvatron,* the Court found that a contracting party could not assert a fraud claim when it acknowledged, in the contract, that it had "full familiarity with the financial condition ... of the corporation" and generally disclaimed reliance on any representation by any signatory. 466 N.Y.S.2d at 36. Thus, a general disclaimer that a party has relied on any representations of the other signatory, coupled with the disclaiming party's assertion of familiarity with a particular subject area, is specific enough to preclude a claim of reliance on statements falling within that topic.

This describes, in essence, the contractual term I am faced with here. Aniero gave a general disclaimer that it did not rely on any information provided by Aetna, while specifically averring that it was familiar with the "current state of the Construction Contract and requisites of performance thereunder." Aniero now claims that, as a result of its reliance on the Project Documents, it was unfamiliar with the full scope of the work it was required to complete. Such a claim was specifically barred by the Waiver Clause.

I am further buttressed in this holding by the fact that the plaintiff is a business sufficiently large and sophisticated to take on a project whose cost it estimated at close to $19 million. Moreover, the contract states that both parties participated in its drafting, Completion Agreement

¶ 15, and it is clear from the specificity of the document that, to some extent, it was tailored to the matter at issue, and was not merely a standard form agreement. *See, e.g.,* Completion Agreement ¶ 2 (defining Aniero's responsibility for change order work unapproved as of date of Payment Requisition No. 15). In addition, notwithstanding Aniero's assertions that it was forced to rush the submission of its bid, about one month passed between the acceptance of that bid and the finalization of the Completion Agreement. Aniero's sophistication and the arms-length nature of the transaction compel application of the relaxed specificity requirements set forth in *Citibank. See also Kalisch–Jarcho, Inc. v. City of New York,* 58 N.Y.2d 377, 461 N.Y.S.2d 746, 749, 448 N.E.2d 413 (Ct.App.1983)(enforcement of contractual waiver clause is "especially" warranted when contract was "entered into at arms length by sophisticated contracting parties," including a "large contractor").

Aniero contends that, whatever the scope of the disclaimer, it cannot be used by Aetna to insulate itself from claims of fraud. Indeed, the Second Circuit has clearly stated that "parties cannot use contractual limitation of liability clauses to shield themselves from liability for their own fraudulent conduct." *Turkish v. Kasenetz,* 27 F.3d 23, 28 (2d Cir.1994). This principle has been limited, however, to situations in which "the party against which the disclaimer is asserted is entirely unaware of the existence of the disclaimer," such as when it is "inserted surreptitiously into the final draft of the contract." *Grumman,* 748 F.2d at 737. Aniero makes no allegation that this was the case here.

Thus, the Waiver Clause bars Aniero from claiming reliance on information provided by Aetna unless it can demonstrate that its claims are based on facts peculiarly within the knowledge of the defendant. To make this showing, Aniero must prove that the Project was not readily accessible to investigation by any interested party. *See Banque Arabe,* 57 F.3d at 157. I find that the extent to which Aniero was able to investigate the Morris site is a matter sufficiently in dispute to preclude granting summary judgment on this basis.

In support of its motion, Aetna presents materials issued by Hudson in conjunction with its bid invitation of December 22, 1993, in which it solicited proposals for three projects, among them the Morris Project. As noted above, the materials setting forth this invitation warned that those submitting bids would be deemed to have fully investigated the project sites themselves.

The presence of these warnings, however, is not dispositive of the scope of the investigation Aniero was permitted to perform. Aniero avers that it did not submit its bid for the Morris project in response to this initial invitation, but rather did so in response to an emergency entreaty from Hudson made later. *See* Crevani Aff. ¶ 29. It was in connection with the latter request, Aniero contends, that Hudson provided Aniero with the allegedly misleading documentation at the center of this litigation.[7] *Id.* ¶ 30. Inasmuch as the statements in the bid materials are binding at all, they certainly cannot be conclusive as to bids submitted in response to an entirely different solicitation.[8]

Aetna's affidavits present no further evidence regarding the investigation Aniero was permitted to carry out prior to the

---

**7.** Aetna contends that these allegations contradict those set forth in Aniero's complaint. Aetna's Reply Mem. at 11. In its complaint, however, Aniero alleged that "Aetna through Hudson" solicited bids for the Morris Project in December 1993, and Aniero was "ultimately the successful bidder." Complaint ¶¶ 28–

**29.** While Aniero's pleadings are admittedly sparse in describing these events, they are not inconsistent with the assertions made by Crevani and Hanjis.

**8.** For the same reason, Aetna cannot rely on the portions of the bid materials where Hud-

Completion Agreement's signing. In its memorandum of law, however, Aetna asserts that Aniero was "afforded unfettered access to the construction site, the construction documents, the owner, the defaulted contractor, and all subcontractors." Aetna's Mem. at 28. Even if this unsworn assertion could be considered on a motion for summary judgment, it is contradicted by Aniero's submissions. According to the Hanjis's Affidavit, he was not allowed to independently explore the project site, but rather were taken on a limited tour of selected areas, Hanjis Aff. ¶¶ 21–22, and was not allowed to review Carlin's records concerning the project. *Id.* ¶ 31–32.

Hanjis's affidavit is spotty in some respects. It does not make clear when his tour was made, nor does it specifically assert that either Aetna or Delta actually sought permission to investigate further. Moreover, the tour was, according to Hanjis, conducted by KBF and SCA, not by Aetna. Nonetheless, in the absence of any contrary affidavits, Hanjis's assertions are sufficient to raise triable issues of fact as to whether Aniero was denied access to information in Aetna's and Hudson's possession regarding the state of the project.

Furthermore, the allegations in Aniero's complaint are not limited to purported misrepresentations regarding the physical state of the Project, but also involve contractual terms which Aetna is accused of concealing. For example, Aniero contends that it was compelled to comply with the terms of Change Order No. 113 ("the New Protocol"), setting restrictive conditions on work at the Project, although this protocol was not present on the Change Order List. Complaint ¶ 40; Crevani Aff. ¶ 42–r. This assertion also gives rise, at the very least,

to a disputed issue of fact material to whether Aetna had facts within its possession not available to Aniero, and thus to the application of the Waiver Clause.

Finally, I hold that principles articulated above in regard to Aetna hold true for Hudson as well. Although the Waiver Clause makes specific reference only to Aetna, Aniero's fraud claims against Hudson state explicitly that Hudson was acting as Aetna's agent. *See, e.g.,* Complaint ¶ 252. A Waiver Clause of the kind at issue here renders non-existent authorized representations made by a contracting party's agents. *See Wittenberg v. Robinov,* 9 N.Y.2d 261, 213 N.Y.S.2d 430, 431, 173 N.E.2d 868 (Ct.App.1961). Aniero may evade application of this clause as to Hudson, however, if it can show that Hudson's statements were not authorized by Aetna. *Id.* at 431–32.

In light of the above, I conclude that although the Waiver Clause meets the specificity requirements of *Danann* and its progeny, it does not prohibit Aniero from asserting that it reasonably relied on misrepresentations by Aetna and Hudson, if it can show that the assertions relied on concerned information uniquely in Hudson's and Aetna's possession, or, in the case of Hudson, if it can demonstrate that Hudson was acting outside the scope of its agency relationship. I will now proceed to address, in turn, the specific causes of action alleged by Aniero's complaint.

III. Claims Alleged Against Both Aetna and Hudson

A. Fraud

1. Rule 9(b)

Aetna and Hudson argue that Aniero's fraud claims are not pled with sufficient

___

son and Aetna state that they "do not warrant the accuracy or completeness of the informa-

tion provided ...." Lambert Aff. ex. 5B at 1.

particularity to meet the requirements of Fed.R.Civ.P. 9(b). That rule provides: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." As Aetna's motion has been deemed to be seeking summary judgment, I may consider the affidavits filed by Aniero in assessing whether its allegations are sufficient to state a claim for fraud. *See Connors v. Hallmark & Son Coal Co.*, 935 F.2d 336, 344 (D.C.Cir.1991); *Ellis v. Carter*, 291 F.2d 270, 275–76 (9th Cir.1961).

I find Aniero's averments of knowledge and intent to be specific enough to pass muster under Rule 9(b). In light of Aetna's and Hudson's role in soliciting bids for the Project, Aniero's contention that Aetna and Hudson were aware of the Project's status is adequate to plead knowledge. As to scienter, conclusory assertions of intent are sufficient "if supported by facts giving rise to a strong inference of fraudulent intent." *IUE AFL–CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1057 (2d Cir.1993) (citation omitted). This may be accomplished "through allegations of a motive to deceive and access to accurate information." *Cohen v. Koenig*, 25 F.3d 1168, 1173–74 (2d Cir.1994). The allegations set forth in the instant case can support such an inference. Aniero maintains that AFC, when given full access to details on the state of the project, raised its bid by $7 million. The affidavit submitted by Aetna on this issue does not contradict Aniero's assertion that at least some of this increase was the result of information AFC

gained about the state of the Project, and thus it does not foreclose Aniero's argument.[9] If Aniero's allegations are proven, they would establish Aetna's motive to conceal, a motive that Hudson would share as Aetna's agent. This, in turn, could permit an inference that Aetna and Hudson acted with intent to defraud.

Rule 9(b) also requires that the plaintiff "allege the time, place, speaker and sometimes even the content of the alleged misrepresentation." *IUE AFL–CIO Pension Fund*, 9 F.3d at 1057 (*citing Ouaknine v. MacFarlane*, 897 F.2d 75, 79 (2d Cir. 1990)), *cert. denied*, 513 U.S. 822, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994). Aetna contends that Aniero did not "ascribe a single false or misleading statement to Aetna," Aetna's Mem. at 33, thereby failing to allege fraud with the requisite specificity. Hudson echoes this argument on its own behalf. *See* Hudson's Mem. at 13–14.

As a preliminary matter, I find the complaint's delineation of the functions played by Hudson and Aniero in the allegedly fraudulent conduct to be adequate under Rule 9(b). Aniero's complaint charges that "Aniero and Hudson provided ... only selected and limited documentation and information relating to the Project," and later states that Aetna "participat[ed] in the dissemination" of this information. Complaint ¶¶ 30, 156. These allegations alone, which do not specify Aetna's and Hudson's precise role, might not suffice under Rule 9(b). *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young*, No. 91–civ–2923, 1994 WL 88129, at *7 (S.D.N.Y. March 15, 1994)(CSH)( "Sweeping references to the collective fraudulent

---

9. Aetna contends that Aniero's description of AFC's experience demonstrates that information as to the Project's status was available to Aniero, had it made an effort to obtain it. Aniero's Br. at 29. It is plaintiff's contention, however, that Aniero and Delta were given only limited access to the Project's site and documents. On the current state of the record, there is at least a disputed question of fact on the extent to which the requisite information was available for plaintiff's review.

actions of multiple defendants will not satisfy the particularity requirements of Rule 9(b)"). I find, however, that Aniero's assertions that it received the Project Documents from "Aetna through Hudson," and that Hudson acted "on behalf of Aetna" in soliciting bids for the Project, Hanjis Aff. ¶¶ 15–16; Complaint ¶ 28, allege, in essence, that Hudson acted as Aetna's agent in distributing the materials at issue.[10] The fraudulent statements of an agent, when made within the scope of its agency, are attributable to the principal. *See Trugman–Nash, Inc. v. New Zealand Dairy Bd.,* 942 F.Supp. 905, 924 (S.D.N.Y.1996)(*citing Chase Manhattan Bank, N.A. v. Perla,* 65 A.D.2d 207, 411 N.Y.S.2d 66, 69 (4th Dep't 1978)). When taken in tandem, therefore, Aniero's allegations that Hudson provided Aniero and its bidding partner with fraudulent materials, and that it did so in Aetna's behalf, sets forth a satisfactory allegation of both parties' roles in the purported fraud for purposes of Rule 9(b). I must examine, therefore, whether the statements or omissions attributed to the defendants are pinpointed with enough precision. For that purpose, I turn to the individual causes of action brought by Aniero.

### 2. Fraudulent Inducement

To state a claim for fraudulent inducement under New York law, a plaintiff must show: (1) a representation of material fact, (2) which was untrue, (3) which was known to be untrue or made with reckless disregard for the truth, (4) which was offered to deceive another or induce him to act, and (5) which that other party relied on to its injury. *Helmsley–Spear v. Westdeutsche Landesbank,* 692 F.Supp. 194, 203 (S.D.N.Y.1988)(*citing Jo Ann Homes at Bellmore, Inc. v. Dworetz,* 25 N.Y.2d 112, 302 N.Y.S.2d 799, 803, 250 N.E.2d 214 (Ct.App.1969)). In its complaint, Aniero alleges that the Project Documents "materially misrepresented" the status of the work that Carlin had performed on the Project, the amount of work remaining to be completed, and the extent of remediation done by Carlin. Complaint ¶ 37. These broad allegations are, by themselves, insufficient to meet the requirements of Rule 9(b). *Cf. Luce v. Edelstein,* 802 F.2d 49, 54 (2d Cir.1986)(general claims that plaintiff misstated net worth does not pass muster under Rule 9(b)). Moreover, although Aniero provides detailed lists of "overstated work" and "phantom work" approved by the SCA, Complaint ¶¶ 371–m, it nowhere indicates that these data bear any connection to the information set forth in the Project Documents, which form the basis for Aniero's fraud claims. Indeed, a review of the Project Documents does not reveal any clear connection between the information set forth thereon and the work Aniero claims to have been overstated in its complaint.[11] *See* Hanjis Aff. exs. 1–3.

The affidavits accompanying the summary judgment motion succeed only in further muddying these waters. The Crevani Affidavit sets forth the same conclusory allegations contained in the complaint, and lists again the aspects of Carlin's work

---

**10.** The materials drafted by Hudson in connection with the December 22 bid invitation support this allegation. The invitation itself is signed "The Aetna Casualty and Surety Company By: Hudson International." Lambert Aff. ex. 5A. Bids were to be addressed to Aetna "c/o Hudson." Moreover, in the Completion Agreement, Hudson is referred to as "Aetna's Representative." Completion Agreement ¶ 3.

**11.** To the extent Aniero is alleging that the work defects were wrongfully omitted from these documents, that claim is better dealt with under the rubric of fraudulent concealment.

Aniero contends to have been wrongfully approved, stating that "Aetna, and other defendants, asserted [that the uncompleted work was] the responsibility of Aniero to perform." Crevani Aff. ¶ 41j–1. This filing points to no specific areas of the Project Documents which were false and known to be so by Aetna.

Moreover Aniero does not claim that the Project Documents were prepared by either Hudson or Aetna.[12] Complaint ¶ 31. It cannot be said that these documents constituted fraudulent statements of the moving defendants unless those defendants falsely represented that the documents were accurate representations of the project, or provided the documents in such a manner that could be construed as vouching for the truth of the data they contained. *Cf.* Restatement (Second) of Torts § 525 cmt. b (1977) (misrepresentation denotes not only words, but also "conduct which amounts to an assertion not in accordance with the truth"). Aniero, however, studiously avoids any such portrayal of defendant's actions, restricting itself to conclusory allegations that the Project Documents "purportedly presented an accurate picture," Complaint ¶ 1, or were "relied on by Aniero as accurately depicting the financial status of the Project." Complaint ¶ 31.

I find, therefore, that Aniero has not spelled out its claim of fraudulent inducement with sufficient specificity under Rule 9(b), and dismiss this claim. Dismissals made pursuant to this Rule, however, are "almost always" accompanied by a grant of leave to amend, unless the plaintiff has had a prior opportunity to amend its complaint or the allegations were made after full discovery in a related case. *Luce,* 802 F.2d at 56. Neither of these considerations is applicable here. Moreover, while the liberal provisions for amendment under the Federal Rules are restricted following the filing of a motion for summary judgment and the completion of discovery, *see Ansam Assocs., Inc. v. Cola Petroleum Ltd.,* 760 F.2d 442, 446 (2d Cir.1985), in the instant case, it appears that discovery had barely begun at the time the defendants' motions were filed. *See Walton v. Waldron,* 886 F.Supp. 981, 984 (N.D.N.Y. 1995)(leave to amend granted after filing of summary judgment motion where "very little discovery" completed). I decline, moreover, to conclude that plaintiff should not be permitted to amend its complaint because it had the opportunity to rectify the shortcomings therein in the affidavits submitted in opposition to the Aetna's summary judgment motion. *Cf. Bay State Mill. Co. v. Terranova Bakers Supplies Corp.,* 871 F.Supp. 703, 707 (S.D.N.Y.1995)(denying leave to amend, in part, where evidence submitted in opposition to summary judgment did not clear up vague aspects of the complaint). In the instant case, Aetna's Rule 9(b) challenge read, in pertinent part, as follows: "Plaintiff, in pleading fraud, has failed to comply with Rule 9(b), *inter alia,* by failing to ascribe a single false or misleading statement to Aetna." Aetna's Mem. at 33. Be-

---

12. Aniero's complaint states that the Punchlists were prepared by KBF. Complaint ¶ 31c. Payment Requisition No. 15 and the Change Order List delineate the amount of work claimed to have been performed by Carlin and approved by KBF and SCA. I note that, absent some representation made by Aetna or Hudson concerning these documents, there is nothing on their face which purports to describe the state of the Project. Payment Requisition No. 15 and the Change Order List purport only to catalogue the value of the work which Carlin asserted that it had completed, and the fact that Carlin's submissions were approved. The Punchlists include no representation whatsoever as to the meaning of their contents.

cause this argument did not place Aniero on notice of the precise nature of the defects which have led me to dismiss this claim, I will not deem Aniero to have had sufficient opportunity to remedy those failings in its affidavits.

As a result, I dismiss Aniero's fraudulent inducement claim with leave to amend. In that amendment, Aniero shall specify the precise statements contained in the Project Documents that it avers to be false. Moreover, Aniero must specify the statements or conduct engaged in by the moving defendants which led it to believe it could reasonably rely on the Project Documents as accurately depicting the state of the Morris Project.

### 3. Fraudulent Concealment

The elements of fraudulent concealment under New York law are: a relationship between the contracting parties that creates a duty to disclose, knowledge of the material facts by the party bound to disclose, scienter, reliance, and damage. *Congress Financial Corp. v. John Morrell & Co.*, 790 F.Supp. 459, 472 (S.D.N.Y. 1992). Aetna's primary attack on this claim is premised on the purported absence of a duty by Aetna to disclose the facts allegedly absent from the Project Documents.

A duty to disclose arises in one of three circumstances: where the parties are in a fiduciary relationship; under the "special facts doctrine," where "one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge," *Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank*, 731 F.2d 112, 123 (2d Cir.1984); or where a party has made a partial or ambiguous statement, whose full meaning will only be made clear after complete disclosure, *Brass v. Am. Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir.

1993). Aetna again maintains that Aniero's warranty in the Waiver Clause that it was fully familiar with the Project, and the requirement set forth in the December 22 bid materials that all bidders make full investigation of the site, preclude application of the special facts doctrine to this case. For reasons discussed at length above, each of these arguments is unavailing, as the question of whether Aetna and Hudson had "superior knowledge" of the state of the Project cannot be resolved on summary judgment.

This claim, however, like that for fraudulent inducement, must pass muster under Rule 9(b). Aniero bases this cause of action on the absence of the New Protocol and other change orders from the Change Order List. *see* Complaint ¶¶ 40–41. It also asserts that the Punchlists, which purported to set forth the defective work which the completion contractor would be required to correct, "grossly and materially misstated the quantity and scope" of that work, and that Payment Requisition No. 15 "omitted numerous change orders." Complaint ¶ 37c-d. A list of specific defects in Carlin's work that Aniero maintains were concealed from it by the defendants in general, and by Aetna and Hudson in particular, is included in the complaint. Complaint ¶¶ 37n, 151, 251.

I find that these allegations suffer from the same defects present in plaintiffs' fraudulent inducement claims. Aniero never contends that Project Documents were prepared by Hudson or Aetna, and it affirmatively states that KBF compiled the Punchlists. Complaint ¶ 31. This does not preclude the possibility that the documents were presented to Aniero in such a manner from which it could reasonably believe that they were exhaustive. There is nothing on the face of the documents, however, which gives any such indication; indeed, the Change Order List appears to

indicate the opposite, as there are large gaps in the numbers that identify the change orders cataloged thereon. While Hanjis states that he was assured by KBF and SCA that the all defective work was set forth on the punch list, Aniero never makes such an allegation against Aetna or Hudson.[13] The mere assertion that the moving defendants provided these documents, by itself, does not indicate the nature of their fraudulent conduct.

In short, Aniero has failed to set forth the precise circumstances in which it received the Project Documents, and how those circumstances gave rise to a reasonable belief on plaintiff's part that they were comprehensive. As a result, this claim is dismissed under Rule 9(b) as to both Hudson and Aetna, with leave to amend so that Aniero may specify defendants' fraudulent conduct with greater precision.

## B. Negligent Misrepresentation

A negligent misrepresentation is actionable under New York law where the defendant has been careless "in imparting words upon which others were expected to rely and upon which they did or failed to act to their damage," and where the author of the statement has "some relationship or duty ... to act with care" vis-a-vis the party at whom the statement is directed. *White v. Guarente,* 43 N.Y.2d 356, 401 N.Y.S.2d 474, 478, 372 N.E.2d 315 (Ct.App. 1977). Such a claim must be pled in accordance with the specificity criteria of Rule 9(b).[14] *See In re Leslie Fay Cos., Inc. Securities Litig.,* 918 F.Supp. 749, 767 (S.D.N.Y.1996); *Pitten v. Jacobs,* 903 F.Supp. 937, 951 (D.S.C.1995).

For reasons set forth in § III.A, *supra,* the allegations in Aniero's complaint concerning the representations made to it by the moving defendants are not presented with sufficient specificity to establish a claim for purposes of Rule 9(b). Moreover, as discussed above, Aniero's complaint clearly states that the Project Documents were not created by Hudson, or drawn up for the purpose of soliciting Aniero's bid. Under New York Law, however, a negligent representation must be made "for the very purpose of inducing action," and the action may not be merely "an indirect or collateral consequence thereof." *Prudential Insurance Co. v. Dewey Ballantine, Bushby, Palmer & Wood,* 80 N.Y.2d 377, 590 N.Y.S.2d 831, 834, 605 N.E.2d 318 (Ct.App.1992) (citation omitted). As Aniero has failed to allege with specificity any representation made to it by the instant movants to induce its

13. Aniero's conclusory allegations that KBF, SCA, Aetna and Hudson engaged in a conspiracy to defraud Aniero, Complaint ¶¶ 67–70, does not cure its failure to explain how Aetna and Hudson acted fraudulently in providing Aniero with purportedly incomplete documents that they played no role in preparing. *Cf. Segal v. Gordon,* 467 F.2d 602, 608 (2d Cir.1972) ("The word 'conspiracy' does not alone satisfy the requisite specificity requirements of Rule 9(b)").

14. Aetna and Hudson only raise Rule 9(b) in opposition to Aniero's fraudulent inducement claim. Although failure to assert a 9(b) objection can result in its waiver, *see Todaro v.* *Orbit Int'l Travel, Ltd.,* 755 F.Supp. 1229, 1234 (S.D.N.Y.1991); *Stonehill v. Security Nat'l Bank,* 68 F.R.D. 24, 44 n. 38 (S.D.N.Y. 1975), I decline to find that this occurred here. Such a determination would allow Aniero to proceed on some claims on the basis of the same vague allegations which I deemed insufficient underpinning for other claims. I will not invite such confusion upon this Court, and will instead impose a consistent standard for all claims alleging fraudulent or negligent representations. For the same reason, I decline to find a waiver in Hudson's failure to raise Rule 9(b) in its answer.

entry into the Completion Agreement, I dismiss this claim under Rule 9(b).

Leave to amend may be denied following a Rule 9(b) dismissal if an amendment would be futile. *See Chill v. Gen. Elec. Co.*, 101 F.3d 263, 271 (2d Cir.1996). The defendants vigorously argue that, regardless of the nature of the representations attributed to them, Aniero's claim must fail because it has not alleged facts which would create a special relationship between the parties, so as to give rise to a duty of care. I am unable to state with certainty, on the present record, that this is necessarily the case. A duty of care may arise when "there is actual privity of contract between the parties or a relationship so close as to approach that of privity," *Ossining Union Free School District v. Anderson LaRocca Anderson*, 73 N.Y.2d 417, 541 N.Y.S.2d 335, 338, 539 N.E.2d 91 (Ct.App.1989), or if the defendant has fiduciary obligations to the plaintiff, *Stewart v. Jackson & Nash*, 976 F.2d 86, 90 (2d Cir. 1992); *see also Banque Arabe*, 57 F.3d at 158 (negligent misrepresentation requires "a special relationship of trust or confidence between the parties").[15] A relationship is considered "so close as to approach that of privity" when the following criteria are met: 1) the defendant makes a statement with the awareness that the statement was to be used for a particular purpose; 2) a known party or parties rely on

this statement in furtherance of that purpose; and 3) there is some conduct by the defendant linking it to the party or parties and evincing defendant's understanding of their reliance. *Ossining Union*, 541 N.Y.S.2d at 339, 539 N.E.2d 91 (*citing Credit Alliance Corp. v. Arthur Andersen & Co.*, 65 N.Y.2d 536, 493 N.Y.S.2d 435, 483 N.E.2d 110 (Ct.App.1985)). In contrast, where the statement at issue is directed at a "faceless of unresolved class or persons," no duty of care arises. *See White*, 401 N.Y.S.2d at 477, 372 N.E.2d 315.

If Aniero is able to cite specific representations made by Aetna or Hudson for the purpose of inducing it to enter the contract, the elements needed to establish a relationship of near-privity may be met. Because I do not believe the filing of an amended complaint would be futile as to this claim, I grant the plaintiff leave to amend so as to set forth the representations at issue with greater particularity.

## IV. Claims Presented Against Aetna Alone

### A. Rescission

Aniero seeks to rescind the Completion Agreement on the grounds of unilateral or mutual mistake. Specifically, Aniero alleges in its complaint that either Aniero alone, or both Aniero and Aetna, were

---

**15.** *Stewart* and *Banque Arabe* can be read to limit negligent misrepresentation claims to those cases in which a fiduciary duty is implicated. Although these opinions state that a negligent misrepresentation claim will not lie unless the parties share a fiduciary or otherwise "special" relationship, they cannot be read to preclude such a cause of action brought on grounds of privity or near-privity. The latter basis for a negligence action has been continually reaffirmed by the New York Courts, as well as by the Second Circuit in an opinion issued subsequent to *Banque Arabe*.

*See Dorking Genetics v. United States,* 76 F.3d 1261, 1269–71 (2d Cir.1996). Courts have reconciled the discrepancy in the caselaw by recognizing a fiduciary duty as one, but not the exclusive, basis for a negligent misrepresentation claim. *See, e.g., In re Leslie Fay Cos.*, 918 F.Supp. 749, 769 (S.D.N.Y.1996)("A fiduciary relationship may be a sufficient condition to support a claim for negligent misrepresentation absent the existence of actual privity; however, it is not a necessary condition . . . .").

mistaken as to the accuracy of the Project Documents. Complaint ¶¶ 174–94.

As a preliminary matter, Aetna contends that rescission is an inappropriate remedy because Aniero delayed too long in seeking this relief. *See Allen v. WestPoint–Pepperell, Inc.*, 945 F.2d 40, 47 (2d Cir.1991)("An action for rescission must be initiated without unreasonable delay."). In *Allen*, the Court found that when there was "little evidence" probative of this issue, delay should not be a basis for dismissal. *Id.* In the instant case, there is no proof whatsoever as to when plaintiff learned of the purported defects of which it had been unaware at the time it entered the Completion Agreement. If these defects only became apparent just prior to the commencement of the litigation at hand, the delay would not be unreasonable. In the absence of any evidence on this point, I will proceed to the merits of Aniero's claims.

Where the parties have entered into a contract because of a mutual mistake, that contract "will generally be avoidable." *Alden Auto Parts Warehouse, Inc. v. Dolphin Equipt. Leasing Corp.*, 682 F.2d 330, 333 (2d Cir.1982). In contrast, a party's unilateral mistake will not provide a basis for rescission unless it is accompanied by some fraud committed by the other contracting party. *See National Union Fire Ins. Co. v. Walton Ins. Ltd.*, 696 F.Supp. 897, 902 (S.D.N.Y.1988)("Unilateral mistake without fraud or wrongful conduct, however, is not a sufficient ground for contract rescission or reformation."); *Brandwein v. Provident Mutual Life Ins. Co.*, 3 N.Y.2d 491, 168 N.Y.S.2d 964, 967, 146 N.E.2d 693 (Ct.App.1957)("classic" grounds for reformation of contract are "mutual mistake of the parties" or "mistake on plaintiff's part and a fraud by defendant"). To rescind a contract because of unilateral mistake, therefore, the

plaintiff must show "misrepresentation, concealment or nondisclosure of a material fact; an intent to deceive; and an injury resulting from justifiable reliance by the aggrieved party." *Allen*, 945 F.2d at 44.

Aetna argues that Aniero's allegation of mutual mistake is inconsistent with its fraud claims, as Aetna could not have deliberately misled the plaintiff if it was unaware of the facts which it fraudulently misrepresented or concealed. Aniero responds by citing its right to plead in the alternative. *See* Fed.R.Civ.P. 8(e)(2). As a general matter, Aniero is correct. A party may "plead two or more statements of a claim, even within the same count, regardless of consistency." *Henry v. Daytop Village, Inc.*, 42 F.3d 89, 95 (2d Cir. 1994). Aniero cannot rely on this principle, however, where it must state allegations which are at odds with each other in order for it to make out all the elements of an individual claim. This is precisely the case here.

To demonstrate that it entered into the contract as a result of its mistaken belief concerning the validity of the Project Documents, Aniero must escape the application of the Waiver Clause. As that clause stated that Aniero had independently made itself familiar with the state of the Project, Aniero cannot claim that it entered into the Completion Agreement as a result of its mistaken reliance on the Project Documents so long as that clause is in force. For reasons discussed above, the Waiver Clause will apply unless Aniero can show that the information upon which it relied was "peculiarly within the knowledge" of the defendant. *See supra* pp. 576–80. Such a showing, however, would vitiate Aniero's assertion that Aetna was mistaken as to the state of the Project as set forth in the Hudson documents. In short, Aniero's mutual mistake claim is at

war with itself, and cannot survive a motion for summary judgment.

Aniero's claim of unilateral mistake suffers from a different defect. As stated *supra* pp. 582–84, Aniero has not alleged the requisite elements of fraud with sufficient specificity. In the absence of a viable fraud claim, Aniero cannot state a claim for rescission on the basis of unilateral mistake. This claim is therefore dismissed under Rule 9(b), with leave to amend as set forth above.

## B. Breach of Contract

Aniero presents two claims against Aetna arising out of the latter's purported violation of the Completion Agreement. First, plaintiff alleges that Aetna breached the contract by "failing to pay Aniero the amounts due and owing . . . for work duly performed in accordance with the Completion Agreement." Complaint ¶ 134. Second, it charges that this failure constituted an anticipatory breach of the Agreement, demonstrating Aetna's intent not to perform any further obligations thereunder. *Id.* ¶ 138–39.

The Completion Agreement established the following scheme for disbursing payments to Aniero: Aniero was to submit monthly payment applications to SCA, reflecting its progress since the prior requisition, with a copy also submitted to Hudson. Completion Agreement ¶ 3. SCA would then make payment to Aetna, which was required to transfer the money to Aniero within five days of receiving the funds or obtaining approval of Aniero's application from Hudson, whichever came later. *Id.* The Completion Agreement also set forth a framework for distribution of payments made pursuant to change orders. Payments for such work were to be made directly by SCA to Aetna. *Id.* ¶ 6. When the change orders had been submitted prior to the date of the Agreement, payment was to be made on Aetna's account. Aetna and Aniero were to receive *pro rata* compensation for work performed partially by both Aniero and Carlin, and Aetna was to pay Aniero fully for work performed solely by Aniero. *Id.* ¶ 5.

As stated *supra*, Gillen contends in his affidavit filed on Aetna's behalf that Aniero presented Aetna with five requisitions for payment during the time it was engaged on the Project. According to Gillen, Aetna paid Aniero for four of these, but did not make payment of the fifth because Aniero had then ceased to perform its part on the Agreement. Gillen Aff. ¶ 19. Aetna appended to its motion copies of the requisitions alluded to, and of the checks made out to Aniero for the amounts requested. Lambert Aff. ex. 10.

Aniero disputes Gillen's characterization of the parties' financial dealings. Crevani, in his affidavit, states that Aniero's request for payment for the month of October was approved by SCA, and Aetna drew up a check for the requested amount. According to Crevani, the check was provided to Aetna's representative at the site "on or about December 21, 1994," the day before Aniero abandoned the project, but was never turned over to Aniero. Crevani Aff. ¶ 61. Crevani also claims that Aniero received no compensation for change order work for which it was substantially responsible. *Id.* ¶¶ 60–61. Aetna, for its part, has made no evidentiary showing regarding the change order payments made to Aniero. Furthermore, Crevani contends that Aniero received no compensation whatsoever for the work it performed in November and December, although he does not make clear what steps Aniero took, in accordance with the contractual procedures, to insure that such payment was made.

The parties' filings demonstrate that there are unresolved issues of fact materi-

al to Aniero's breach of contract claim. Aniero's affiant alleges facts which, if proved at trial, would show that Aetna had not met its obligations under the Completion Agreement. That Agreement required Aetna to compensate Aniero for change order work it completed. Aniero has presented uncontested, admissible evidence that it did not receive the requisite funds, while Aetna, which bears the burden of demonstrating the absence of any disputed issue of fact, has adduced no proof on this issue. Furthermore, Crevani's affidavit places in dispute Aetna's contention that it made all the disbursements required in response to Aniero's requisitions. Therefore, summary judgment will be denied as to this cause of action.

The breach of contract claim premised on a theory of anticipatory breach, however, fails on the face of Aniero's own affidavits. Under the doctrine of anticipatory breach, "a wrongful repudiation of the contract by one party before the time of performance entitles the non-repudiating party to immediately claim damages for total breach," and will relieve the non-repudiating party of its obligations of future performance. *American List Corp. v. U.S. News & World Report, Inc.*, 75 N.Y.2d 38, 550 N.Y.S.2d 590, 593–94, 549 N.E.2d 1161 (Ct.App.1989) (citations omitted). Repudiation occurs when a party manifests an intent not to perform, either by words or by deeds, *See 200 East 87th Street Assocs. v. MTS, Inc.*, 793 F.Supp. 1237, 1253 (S.D.N.Y.), *aff'd mem.*, 978 F.2d 706 (2d Cir.1992); *Key Bank of New York, N.A. v.*

*K.H. Assocs.*, 210 A.D.2d 769, 620 N.Y.S.2d 537, 537 (3rd Dep't 1994); *see also* Restatement (Second) of Contracts § 250 (1981)(obligor repudiates contract when it states its intent to totally breach, or when it commits an affirmative act which renders it unable to perform absent such a breach), or when one party "insist[s] upon terms that are not contained in a contract," *Towers Charter & Marine Corp. v. Cadillac Ins. Co.*, 894 F.2d 516, 523 (2d Cir.1990)(*quoting REA Express, Inc. v. Interway Corp.*, 538 F.2d 953, 955 (2d Cir. 1976)), or otherwise advances an untenable interpretation of the contract.[16] *SPI Communications, Inc. v. WTZA-TV Assoc. Limited Partnership.*, 229 A.D.2d 644, 644 N.Y.S.2d 788, 790 (3rd Dep't 1996); *see also Hampton v. District Council 37 Health & Sec. Plan*, 97 Misc.2d 324, 411 N.Y.S.2d 124, 127 (N.Y.City Civ.Ct.1978) (interpretation must be on matter of "essential substance").

Aniero's complaint alleges only one specific act by Aetna which purportedly gave rise to the anticipatory breach—its "failure to pay Aniero for work duly performed." Complaint ¶ 138. According to Aniero, this act made performance of the Completion Agreement impossible, and constituted an unequivocal repudiation of Aetna's contractual obligations. *Id.*

Aetna's alleged failure to make full payments on the contract, however, cannot be construed as an action by which it manifested an intent to fully breach the Completion Agreement. In Crevani's own affi-

---

**16.** The Second Circuit has held that a claim for anticipatory breach also requires that the plaintiff show that it "was ready, willing and able to perform its own obligations under the contract when performance was due." *Towers Charter*, 894 F.2d at 523. Assuming that this is an accurate depiction of the current state of New York law, *but see American List Corp.*, 550 N.Y.S.2d at 594, 549 N.E.2d 1161 ("The non-repudiating party need not ... tender performance nor prove its ability to perform the contract in the future ...."), there is nothing in the record demonstrating that Aniero could prove this element *vel non*. Because I find that Aniero's claim of anticipatory breach must fail on other grounds, I need not reach this question.

davit, he claims that when Aetna received the December 21 check, its representative at the project site informed Aniero's employees that he would hold the check until "after the holidays." Crevani Aff. ¶ 63. Whatever the validity of this action under the Agreement, this statement evinces a belief that the contract was to remain in place. For a party's action to constitute repudiation, it must "make it actually or apparently impossible for [that party] to perform." Restatement (Second) of Contracts § 250 cmt. c (1981). The Restatement gives as an example of such behavior an owner who contracts to sell a piece of land, and then sells the same to another buyer prior to the contract's implementation. *Id.* illus. 5. In light of the statement cited by Crevani, Aetna's purported failure to make timely payments does not reveal the necessary intent to render performance impossible.

Aniero appears to contend that Aetna's failure to make timely payments was equivalent to insisting upon terms not contained in the Completion Agreement. *See* Aniero's Mem. at 53–55. The cases in which such an insistence was found to constitute anticipatory breach, however, concerned instances where one party demanded that the contract be governed by terms contrary to those agreed upon. *See REA Express*, 538 F.2d at 955; *Wester v. Casein Co. of America*, 206 N.Y. 506, 100 N.E. 488 (1912); *Estes v. Curtiss Aeroplane & Motor Corp.*, 191 A.D. 719, 182 N.Y.S. 25 (4th Dep't 1920), *aff'd per curiam*, 232 N.Y. 572, 134 N.E. 576 (1922). By doing so, that party "repudiated a material provision of the contract," *Estes*, 182 N.Y.S. at 26, thereby revealing its intent not to perform.

Aniero, however, does not contend that Aetna demanded that the contract be modified. Instead, it asserts that Aetna's performance fell short of the contractual requirements. If this allegation sufficed to support a claim for anticipatory breach, any time a party violated any contractual term, a claim that it had repudiated the contract would lie. Because this is not the law, and in the absence of any allegation that Aetna evinced an intent to be in "total breach," Aetna's motion for summary judgment is granted as to that aspect of Aniero's breach of contract claim which is based on a theory of anticipatory breach.

## C. Tortious Interference With Contract

To state a claim for tortious interference with contract under New York law, a plaintiff must show that there existed a valid contract between the plaintiff and a third party, the defendant knew of the contract, and the defendant intentionally and improperly interfered therewith. *Enercomp Inc. v. McCorhill Pub., Inc.*, 873 F.2d 536, 541 (2d Cir.1989). Although the nature of Aniero's claim appears to have changed during the course of this litigation, no version advanced by plaintiff meets these elements.

In its complaint, Aniero alleges that Aetna wrongfully "assert[ed] the right to receive payment for change order work with the intent and knowledge that by doing so Aetna would cause SCA to commit a material and substantial brief of SCA's contractual relationship with Aniero under the Carlin Contract." Complaint. ¶ 170. Aniero claims that Aetna acted with the intent of causing such a breach, but never asserts that SCA did, in fact, breach as a result of Aetna's conduct.

These allegations, as they are formulated in the complaint, face a formidable obstacle: The Completion Agreement states explicitly that "[a]ll payments made by the SCA with respect to the Construction [i.e. Carlin] Contract, whether for base contract work or change order work, are to be paid to Aetna." Lambert Aff. ex. 9 ¶ 6.

Aetna then had the obligation to remit to Aniero payments for the work the latter has completed. *Id.* ¶ 5.

A claim for tortious interference with contract cannot rest on conduct that is "incidental to some other lawful purpose." *Costanza Construction Corp. v. City of Rochester,* 135 A.D.2d 1111, 523 N.Y.S.2d 707, 708 (4th Dep't 1987); *see also Felsen v. Sol Cafe Mfg. Corp.,* 24 N.Y.2d 682, 301 N.Y.S.2d 610, 613–14, 249 N.E.2d 459 (Ct.App.1969)(quotation omitted)("Procuring the breach of a contract in the exercise of an equal or superior right is ... justification for what would otherwise be an actionable wrong"). As the complaint alleges nothing more than Aetna's exercise of its contractual right, it cannot support a claim for tortious interference with contract.

Aniero has altered the substance of its tortious interference claim in the affidavits it has filed in opposition to summary judgment. Crevani, in his affidavit, acknowledges that Aetna "was to be the conduit," under the Completion Agreement, for change order payment. Crevani Aff. ¶ 59. Nonetheless, he asserts that Aetna kept moneys from such payments to which Aniero was entitled. *Id.* ¶ 59. Aniero's legal memorandum attempts to defend this cause of action as it is stated in the Crevani Affidavit. *See* Aniero's Mem. at 49.

Aniero's attempt to amend its complaint without leave of the Court must ultimately fail. Even had Aniero introduced its current characterization of this claim in its initial pleadings, I would have found it to be meritless. Aniero's reformulation is entirely duplicative of its breach of contract claim; it alleges nothing more than Aetna's failure to comply with the terms of the Completion Agreement. Moreover, Crevani does not assert that SCA, the party with which it was contracting, breached its obligations under the contract at issue.

Instead, he claims that SCA approved the payments destined for Aniero, and only Aetna's misconduct prevented them from reaching the plaintiff. Crevani Aff. ¶¶ 60–61. Absent a showing that Aetna's conduct ultimately led to a breach, Aniero's latest allegations cannot be read to state a proper claim for tortious interference. *See Jack L. Inselman & Co., Inc. v. FNB Financial Co.,* 41 N.Y.2d 1078, 396 N.Y.S.2d 347, 349, 364 N.E.2d 1119 (Ct. App.1977) ("In order for the plaintiff to have a cause of action for tortious interference of contract, it is axiomatic that there must be a breach of that contract by the other party.").

V.   Claims Against Hudson Only

A.   Breach of Contract—Third Party Beneficiary

Aniero alleges, upon information and belief, that Hudson entered into an agreement with Aniero, which required it, *inter alia,* to provide accurate information to prospective bidders for the Morris Project. Complaint ¶ 242. Aniero claims to be a third-party beneficiary of this contract, and asserts that Hudson has failed to carry out its obligations thereunder. *Id.* ¶ 245–47. According to Aniero, this gives rise to a breach of contract action against Hudson.

In its answer, Hudson admitted that it "was retained by Aetna to provide surety consulting services, including the preparation of a bid package and to perform bond claim services." Answer ¶ 242. It maintains, however, that Aniero was merely an incidental beneficiary of its agreement with Aetna. Hudson Mem. at 6.

To prevail on a claim for breach of contract as a third-party beneficiary, the plaintiff must establish the existence of a valid and binding contract between other parties; that the contract was intended for plaintiff's benefit; and the benefit was im-

mediate, and not incidental, so as to "indicate duty to compensate [the plaintiff] if the benefit is lost." *Burns Jackson Miller Summit & Spitzer v. Lindner*, 59 N.Y.2d 314, 464 N.Y.S.2d 712, 722, 451 N.E.2d 459 (Ct.App.1983). Hudson may well be right in its contention that whatever benefits Aniero was to have derived from Hudson's contract with Aetna were merely incidental to that agreement.[17] Its claims however, can only be evaluated by reviewing whatever documents, if any, memorialize the understanding between the two contracting parties. Hudson, which presumably has access to these materials, has failed to provide them to this Court.[18]

Nonetheless, Hudson maintains that the terms of the Waiver Clause make it apparent that Aetna had no intent to benefit Aniero in its agreement with Hudson. Reply Mem. at 4. According to this argument, the Completion Agreement conferred upon Aniero the responsibility to independently investigate the conditions of the Project, and is therefore inconsistent with an intent by Aetna to benefit Aniero by insuring that it be provided with accurate information.

While the Waiver Clause calls Aniero's contentions into question, it does not allow for this issue to be resolved on a motion to dismiss. That clause disclaims representations by Aetna alone, and makes no reference to Hudson. Completion Agreement ¶ 18. Although Aniero's fraud claims are premised on the notion that Hudson acted in Aetna's behalf, it is permissible for Aniero to plead in the alternative, for purposes of this claim, that Hudson violated its understanding with Aetna by providing

Aniero with false information. Faced with a record that lacks the relevant contractual documents, or any other attestations as to the nature of the agreement between Hudson and Aetna, I cannot determine the accuracy of such a theory on a motion brought under Rule 12(b)(6). Therefore, I deny Hudson's motion to dismiss this claim.

### B. Negligence

Aniero's complaint sets forth a claim against Hudson for "negligence," premised on Hudson's purported failure to investigate the Project and provide Aniero with accurate documentation concerning its status. Complaint ¶¶ 269–276. This cause of action is entirely duplicative with Aniero's negligent misrepresentation claim, and the parties' memoranda treat it as such. As a result, I grant Hudson's motion to dismiss this claim.

### C. Who is "Hudson"?

In the caption to its complaint, Aniero names as a defendant "David M. Pharis and S.T. Hudson d/b/a Hudson International," labelled "Hudson" in this opinion. In its memorandum of law, Hudson refers to itself as "S.T. Hudson International, Inc." Hudson Mem. at 1. Moreover, Hudson contends that Pharis was not included in the caption of the summons, and therefore no answer was interposed on his behalf. *Id.* at 1 n. 1.

Hudson's comments generated a response from Aniero by affidavit and in its legal memorandum, in which it defended the moniker it gave this defendant, and alleged that Pharis had notice of the law-

---

**17.** Hudson contends that Aniero failed even to allege that it was an intended beneficiary. Hudson Mem. at 6. This is simply not the case. *See* Complaint ¶ 243.

**18.** Although Hudson's motion seeks dismissal for failure to state a claim, and not summary

judgment, this Court could still review the terms of the contract to resolve this motion, as it is clearly integral to the plaintiff's complaint. *See supra* p. 576.

suit against him, and therefore was properly served. Cecchi Aff.; Aniero Mem. at 13–16. In response, Hudson assured the court that the parties "should be able to resolve this issue amicably" once the instant motions have been decided. Reply Mem. at 2.

I see no means, on the basis of the papers now before me, by which I can establish the proper name for the defendant at issue. I further find that the question of which individuals or entities needed to be served depends, in part, on who the correct defendant should be, and thus cannot be resolved on the present record. The better course, as intimated by Hudson, is to reserve judgment on this issue, and allow the parties to resolve the matter between themselves, or to raise any outstanding issues at the next status conference.

## VI. Conspiracy

Aniero's final cause of action, labelled "conspiracy," charges that all of the named defendants conspired against it for the purpose of fraudulently inducing it to enter the Completion Agreement. Complaint ¶ 278. According to the complaint, the defendants acted in furtherance of this conspiracy by providing Aniero with the Project Documents.

It is a well-settled and often repeated principle of New York law that no cause of action lies for civil conspiracy. *See Durante Bros. and Sons, Inc. v. Flushing Nat. Bank*, 755 F.2d 239, 251 (2d Cir.), *cert. denied*, 473 U.S. 906, 105 S.Ct. 3530, 87 L.Ed.2d 654 (1985); *Vogt v. Witmeyer*, 212 A.D.2d 1013, 622 N.Y.S.2d 393, 394 (4th Dep't 1995), *aff'd*, 87 N.Y.2d 998, 642 N.Y.S.2d 619, 665 N.E.2d 189 (Ct.App. 1996). As Aniero points out, however, a conspiracy may be alleged, "for the purpose of showing that a wrong was committed jointly by the conspirators and that,

because of their common purpose and interest, the acts of one may be imputed to the others." *Grove Press, Inc. v. Angleton*, 649 F.2d 121, 123 (2d Cir.1981). Therefore, Aniero maintains, its conspiracy claim "serves a proper purpose." Aniero's Br. at 59.

The principles set forth in *Grove Press* do not permit a conspiracy cause of action to survive a motion to dismiss so that it may serve a "proper purpose;" they explain the role a *factual allegation* of conspiracy plays in a complaint. Similarly, the proposition that conspiracy may be alleged "to connect a defendant to an otherwise actionable tort," *Buccieri v. Franzreb*, 201 A.D.2d 356, 607 N.Y.S.2d 330, 333 (1st Dep't 1994), does not allow a plaintiff to reallege a tort asserted elsewhere in the complaint in the guise of a separate conspiracy claim. As this is precisely what Aniero has attempted to do, and as the purported purpose of its conspiracy claim is already advanced by the allegations of conspiracy set forth elsewhere in its complaint, Complaint ¶ 67–70, this claim is dismissed as to all defendants. *See Wachtler v. County of Herkimer*, 35 F.3d 77, 82 (2d Cir.1994)(district court may dismiss a complaint *sua sponte*, for failure to state a claim, as to non-moving defendants).

## VII. Punitive Damages

In its complaint, Aniero seeks punitive damages against Aetna and Hudson on its fraud and tortious interference claims. Aetna argues that this demand is deficient as a matter of law. Because the claims on which Aniero has sought this relief have been dismissed, Aetna's application is moot. Aetna may, of course, renew its objection should Aniero choose to seek such damages in an amended complaint.

## VIII. General

To this point, I have dealt only with the defendants' motions as they concern Aniero. I turn now to consider the impact of these motions on General, whose place in the instant litigation derives solely from its role as Aniero's surety.

As is made apparent in the Background section of this opinion, General's motion to intervene has been rendered moot by this Court's order consolidating Aetna's Eastern District action against General with the case brought here by Aniero. As a result of that order, General's third party complaint and counterclaim in the former action are now before this Court. Those pleadings raise every factual allegation and legal claim that General sought to present as an intervenor. There is, therefore, no further basis to General's motion, and it is denied as moot.

Although Aetna's summary judgment motion was directed against Aniero alone, General filed briefs in opposition thereto. Because General's claims mirror those of Aniero in all material respects, and as General cites Aniero as the source for all its material allegations, I see no reason why the grant of partial summary judgment against Aniero should not apply to the identical claims raised by General.

A *sua sponte* grant of summary judgment is permissible "so long as the losing party was notified prior to its grant and is given an opportunity to produce whatever proof it has in opposition." *B.F. Goodrich v. Betkoski*, 99 F.3d 505, 522 (2d Cir.1996) (citation omitted). In the instant case, where General has actually filed briefs in response to Aetna's motion, General has clearly been placed on notice of that motion's contents, and has had the chance to respond. Nonetheless, as the Second Circuit has declared it to be a "prudent course" for the district court to give the party against whom summary judgment is to be granted *sua sponte* a brief period in which to present its opposition, *id.,* and out of an abundance of caution, I will refrain from granting partial summary judgment for Aetna against General for twenty days following the issuance of this opinion, during which time General may submit its basis for opposing such an order. I note, however, that General has already had the opportunity to respond to Aetna's legal arguments, and may not use this opportunity to rehash its objections to them. Rather, it may only present this Court with any basis for why the above rulings concerning Aniero should not apply to its pleadings as well. Moreover, because, I grant leave to amend as to those claims dismissed under Rule 9(b), I see no reason to give General an opportunity to respond to that aspect of this decision. Finally, as Hudson's Rule 12(b)(6) motion did apply to General, and as General has presented a complaint identical to Aniero's, I grant Hudson's motion against General as to those claims that I deemed to warrant dismissal when brought by Aniero.

## IX. Summary

To recap, in this opinion I have reached the following conclusions: I grant summary judgment for Aetna as to Aniero's claims for anticipatory breach, tortious interference with contract, and rescission on the ground of mutual mistake. I will reach this determination as to the identical claims raised in General's third party complaint, absent a showing by General as to why this should not be done, filed within twenty days of this opinion. I dismiss Aniero's and General's claims for fraudulent inducement, fraudulent concealment, negligent misrepresentation, and rescission on the ground of unilateral mistake under Fed.R.Civ.P. 9(b), with leave to amend. Aniero's and General's negligence claims against Hudson are dismissed, as are their conspiracy claims as to all defen-

dants. I decline to grant summary judgment, or otherwise dismiss, Aniero's and General's claims against Aetna and Hudson for breach of contract. General's motion to intervene is denied as moot.

Should either Aniero or General wish to submit an amended complaint, they may do so solely for the purpose of remedying the defects discussed herein in regards to Rule 9(b), and must file that complaint within twenty days of the filing of this opinion. Counsel for all parties are directed to attend a status conference in Room 17C, 500 Pearl Street, at 2:00 P.M. on February 7, 1997.

It is SO ORDERED.

### APPENDIX B

ANIERO CONCRETE COMPANY, INC., Plaintiff,

v.

NEW YORK CITY CONSTRUCTION AUTHORITY; The Aetna Casualty and Surety Company; Kreisler Borg Florman General Construction Company; Acrom Construction Services, Inc.; Kreisler Borg Florman General Construction Company, Inc. and Acrom Construction Services, Inc., Construction Managers, A Joint Venture; David M. Pharis and S.T. Hudson d/b/a Hudson International, Defendants.

The Aetna Casualty and Surety Company, Plaintiff,

v.

General Accident Insurance Company of America, Defendant-Counterclaimant.

General Accident Insurance Company of America, Third-Party Plaintiff,

v.

New York City School construction Authority; Kreisler Borg Florman General Construction Company, Inc., Acrom Construction Services, Inc., Inc., Kreisler Borg Florman General Construction Company, Inc. and Acrom Construction Services Co., Inc., Construction Managers, A Joint Venture; David M. Pharis and S.T. Hudson

d/b/a Hudson International; Aniero Concrete Co., Inc.; Crevani Construction Co., Inc.; Vertolomo's Inc.; Crevani Bros. Realty Co., Inc.; Crevani Farms 1979 Trust Agreement; Stephen G. Crevani, Jr. Trust Agreement; Stephen G. Crevani, Jr. Business Buy-Pass Trust Agreement; Stephen G. Crevani; and Stephen G. Crevani, Jr., Third-Party Defendants.

Nos. 94 Civ. 9111 (CSH), 95 Civ. 3506 (CSH).

Feb. 27, 1997.

### MEMORANDUM OPINION AND ORDER

HAIGHT, Senior District Judge.

In an opinion dated January 3, 1997, I granted summary judgment for defendant The Aetna Casualty and Surety Company ("Aetna") against certain claims brought by plaintiff Aniero Concrete Company, Inc. ("Aniero"). Third-party plaintiff General Accident Insurance Company of America, Inc. ("General"), Aniero's surety, had filed a counterclaim and third-party complaint identical in all material respects to that brought by Aniero, and had submitted legal memoranda in opposition to Aetna's motion. Therefore, I saw no reason why Aetna should not be entitled to summary judgment as to the claims brought by General which were identical to those brought by Aniero which did not survive summary judgment. Slip Op. at 54. Nonetheless, "out of an abundance of caution," I refrained from making a final determination on this question, and granted General twenty days in which to present any reason why summary judgment should not be granted as to these claims. *Id.* I noted that General had already responded to Aetna's legal arguments, and thus could not "use this opportunity to rehash its objections to them." Rather, I permitted General to "present this Court with any basis for why the above rulings concerning Aniero should not apply to its pleadings as well." *Id.*

General has now responded to this Court's order. It resists summary judgment solely as to its claim for rescission on the grounds of mutual mistake. In discussing General's argument, I presume familiarity with my prior opinion and the terms employed therein.

In that opinion, I found that Aniero's mutual mistake claim could not stand. Specifically, I held that, for Aniero to show that it was mistaken about the status of the Morris Project, it would need to avoid its own attestation, contained in its agreement with Aetna, that it was "independently familiar" with the Project. I determined that Aniero could not evade the impact of this contractual clause unless it could show that Aetna had withheld from Aniero information uniquely in Aetna's possession. This threshold finding, however, would vitiate Aniero's claim that the mistaken impression it held as to the project's status was shared by Aetna. As a result, I found this claim to be "at war with itself," and granted Aetna's summary judgment motion.

General now argues that the Waiver Clause only addressed Aniero's reliance on statements made by Aetna. Thus, according to General, both Aniero and Aetna could have been mistaken as to the accuracy of the Project Documents, thereby causing both parties to misapprehend the requisites of performance under the contract.

I need not decide if General's construction of the Completion Agreement is correct. Rather, I conclude that the factual allegations in General's complaint, as well as the evidence presented by Aniero in its opposition to the summary judgment motion, are directly contrary to the argument General now seeks to advance. In its counterclaim, General cites allegations by Aniero stating that Aetna "had complete and unfettered access to the Project Site as well as to Carlin's former project manager," Counterclaim ¶ 44; that employees for Carlin had disclosed to Aetna "the Phantom Work, the Overstated Work, the Concealed Defective Work and the Phantom Materials," *id.* ¶ 45; and that Aetna "had knowledge of the selective and limited documentation made available to Aniero," *id.* ¶ 46. These allegations were repeated in the Crevani affidavit presented by Aniero in opposition to Aetna's motion, Crevani Aff. ¶¶ 45–48, and in General's prior brief, General's Mem. in Opp. to Sum. J. at 11.

Aniero clearly could not proceed on the mutual mistake claim as constructed by General. Although, as I acknowledged in my prior opinion, plaintiffs are permitted to plead in the alternative, Slip Op. at 39 (*citing* Fed.R.Civ.P. 8(e)(2)), this rule "does not excuse a party from being bound by its own explicit admissions of fact." *Morse/Diesel, Inc. v. Fidelity and Deposit Co. of Maryland,* 763 F.Supp. 28, 32, *modified on other grounds,* 768 F.Supp. 115 (S.D.N.Y.1991). The mutual mistake claim now before the court is inconsistent with Crevani's sworn submissions, and thus Aniero could not save it by resort to principles of alternative pleading.

The question presented by General's present filing is whether it may, as a surety, proceed on a claim which could not be successfully asserted by its principal. On the facts of the instant case, I find it cannot. General's pleadings are, in their entirety, "based upon allegations made and claims asserted by ... Aniero." General's Answer at 5–6. As I have noted, General specifically embraced Aniero's averments concerning Aetna's knowledge in its counterclaim.[1] These allegations are not con-

---

1. General's amended counterclaim echoes the assertion in its prior pleadings that Aetna

knew of the Project Documents' purported

tained in separate counts, but are set forth in a section entitled "Allegations Common to All Counts."

General's role in this litigation is derived solely from its status vis-a-vis Aniero. It cannot proceed on the presumption that Aniero's allegations are true, and then seek to evade the impact of those allegations when they are not conducive to the theory it hopes to advance. Because General claims no personal knowledge of the events at issue, its assertions, when they are not supported by Aniero, belong to the realm of pure conjecture.

General argues that, because it is an "outsider" in this litigation, it should be entitled to further discovery before summary judgment may be granted as to this claim. I noted in my prior opinion that "a bare assertion that the evidence supporting a plaintiff's allegation is in the hands of the defendant is insufficient ..." to warrant a denial of summary judgment on the grounds that further discovery is necessary. Slip. Op. at 13 (*citing Contemporary Mission, Inc. v. United States Postal Svc.*, 648 F.2d 97, 107 (2d Cir.1981)). Aniero's filings do not provide support for the notion that Aetna wrongly believed the Project Documents were correct. As General points to no other evidence that might indicate that Aetna was mistaken as to whether the Project Documents accurately described the status of the Morris Project, it seeks to avoid summary judgment on the basis of speculation alone. This it cannot do.

In light of the foregoing, Aetna's summary judgment motion is granted as to General's claim for rescission on the ground of mutual mistake. As General has indicated no basis for denying summary judgment as to its claims of anticipa-

tory breach and tortious interference with contract, Aetna's motion is granted as to these claims as well.[2]

It is SO ORDERED.

## APPENDIX C

ANIERO CONCRETE COMPANY, INC., Plaintiff,

v.

NEW YORK CITY CONSTRUCTION AUTHORITY; the Aetna Casualty and Surety Company; Kreisler Borg Florman General Construction Company; Acrom Construction Services, Inc.; Kreisler Borg Florman General Construction Company, Inc. and Acrom Construction Services, Inc., Construction Managers, A Joint Venture; David M. Pharis and S.T. Hudson d/b/a Hudson International, Defendants.

The Aetna Casualty and Surety Company, Plaintiff,

v.

General Accident Insurance Company of America, Defendant–Counterclaimant.

General Accident Insurance Company of America, Third–Party Plaintiff,

v.

New York City School Construction Authority; Kreisler Borg Florman General Construction Company, Inc.; Acrom Construction Services, Co., Inc.; Kreisler Borg Florman General Construction Company, Inc. and Acrom Construction Services Co., Inc., Construction Managers, A Joint Venture; David M. Pharis and S.T. Hudson d/b/a Hudson International; Aniero Concrete Co., Inc.; Crevani Construction Co., Inc.; Vertolomo's Inc.; Crevani Bros. Realty Co., Inc.; Crevani Farms 1979 Trust Agreement; Stephen G. Crevani, Jr. Trust Agreement; Stephen G. Crevani, Jr. Business Buy–Pass Trust Agreement; Stephen

---

inaccuracy. Amended Counterclaim ¶¶ 75c, 82, 90, 99–102.

**2.** Only the mutual mistake claim is included in General's Amended Counterclaim.

G. Crevani; and Stephen G. Crevani, Jr., Third–Party Defendants.

No. 94 CIV. 9111, 95 CIV. 3506.

March 30, 1998.

## MEMORANDUM OPINION AND ORDER

HAIGHT, Senior District Judge.

The facts and circumstances of this case are set forth in Memorandum Opinions and Orders dated January 3, 1997 and February 27, 1997, familiarity with which is assumed. In the January 3 Opinion, I granted summary judgment for defendant The Aetna Casualty and Surety Company ("Aetna") against certain claims brought by plaintiff Aniero Concrete Company, Inc. ("Aniero"). In the February 27 Opinion, I granted Aetna's summary judgment motion as to identical claims brought by Aniero's surety, third-party plaintiff General Accident Insurance Company of America, Inc. ("General"). In the January 3 and February 27 opinions, I also granted Aniero and General the opportunity to replead the majority of the dismissed causes of action against Aetna and defendants David M. Pharis and S.T. Hudson ("Hudson"). Aniero and General subsequently filed amended pleadings, Hudson filed cross-claims, and defendant The New York City School Construction Authority ("the SCA") filed counterclaims against Aniero and cross-claims against Aetna.

This action is now before the Court on cross-motions filed by Aetna, Aniero, General, and the SCA. On March 25, 1997, Aetna filed a motion to dismiss the amended pleadings of Aniero and General pursuant to Rule 12(b)(6), Fed.R.Civ.P., for failure to state a claim upon which relief can be granted and, alternatively, for summary judgment pursuant to Rule 56(b), Fed. R.Civ.P. On August 8, 1997, Aniero filed a cross-motion for summary judgment pursuant to Rule 56, in which it sought an order: (1) declaring the Completion Agreement executed between Aetna and Aniero on March 18, 1994 to be ineffective, (2) declaring Aetna and the SCA liable to Aniero under the equitable doctrine of quantum meruit, and (3) dismissing Counts 1, 2, and 3 of the counterclaims filed by the SCA against Aniero. On the same date, General filed a cross-motion seeking (1) summary judgment dismissing Aetna's complaint pursuant to Rule 56 or, in the alternative, leave to amend its answer to Aetna's complaint pursuant to Rule 15(a), Fed.R.Civ.P., and (2) leave to amend its third-party complaint and its first amended counterclaim pursuant to Rule 15(a). On November 6, 1997, Aetna filed a motion for summary judgment pursuant to Rule 56 on the issue of General's liability under the causes of action in Aetna's amended complaint. On the same date, the SCA filed a motion for summary judgment on the issue of liability on the SCA's cross-claims against Aetna.

This Opinion resolves these motions and thereby renders all other motions pending in this case moot.

### I. *Standard of Review*

Under Fed.R.Civ.P. 56(c), the moving party is entitled to summary judgment if the papers "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." On such a motion, "a court's responsibility is to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Coach Leatherware Co., Inc. v. AnnTaylor, Inc.*, 933 F.2d 162, 167 (2d Cir.1991) (citing *Knight v. U.S. Fire Insurance*, 804 F.2d 9 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987)) (citation omitted). The responding party "must set forth spe-

cific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). "The non-movant cannot 'escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts,' ... or defeat the motion through 'mere speculation or conjecture.'" *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir.1990) (citations omitted). While the party resisting summary judgment must show a dispute of fact, it must also be a material fact in light of the substantive law. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## II. *The Cross–Motions Filed by Aetna, Aniero, and General*

### A. *Summary Judgment Motions*

Aniero's cross-motion seeks an order pursuant to Rule 56 dismissing Counts 1, 2, and 3 of the counterclaims filed by the SCA on the ground that the Completion Agreement between Aetna and Aniero is invalid. General's cross-motion seeks an order pursuant to Rule 56 dismissing Aetna's complaint on the same ground. In its November 6, 1997 motion, Aetna seeks summary judgment in its favor against General on the claims asserted in Aetna's amended complaint. For the reasons that follow, Aniero's cross-motion is granted to the extent that it seeks dismissal of the SCA's counterclaims against Aniero, General's cross-motion seeking dismissal of Aetna's complaint is granted, and Aetna's motion seeking summary judgment in its favor on the claims asserted in its amended complaint is denied.

---

**1.** The "Carlin Contract" refers to the contract entered between the P.J. Carlin Construction

### 1. *Effectiveness of Completion Agreement*

In their cross-motions, Aniero and General contend that the Completion Agreement executed between Aniero and Aetna is invalid because Aetna failed to obtain the SCA's written consent to Aetna's assignment of the Carlin Contract,[1] an express condition precedent to the formation of the contract.

Paragraph 24 of the Completion Agreement provides:

> *SCA Consent Required.* This Completion Agreement shall have effect only if and when the SCA consents in writing to the assignment of the [Carlin] Contract to Aniero and Aniero's assumption of said [Carlin] Contract. Absence [sic] such consent, Aetna shall have no liability hereunder.

The New York Court of Appeals explained the significance of such a condition in *Oppenheimer & Co. v. Oppenheim, Appel*, 86 N.Y.2d 685, 636 N.Y.S.2d 734, 660 N.E.2d 415 (Ct.App.1995). In its words:

> A condition precedent is 'an act or event, other than a lapse of time, which, unless the condition is excused, must occur before a duty to perform a promise in the agreement arises' (Calamari and Perillo, Contracts § 11–2, at 438 [3d ed.]). Most conditions precedent describe acts or events which must occur before a party is obliged to perform a promise made pursuant to an existing contract, a situation to be distinguished conceptually from a condition precedent to the formation or existence of the contract itself. In the latter situation, no contract arises 'unless and until the condition occurs' (Calamari and Perillo, Contracts § 11–5, at 440 [3d ed]).

Company ("Carlin") and the SCA on July 1, 1992.

*Id.* at 737 (citations omitted); *see also Kapson Constr. Corp. v. ARA Plumbing & Heating Corp.*, 227 A.D.2d 484, 642 N.Y.S.2d 701, 703 (1st Dep't 1996). According to Aniero and General, no contract arose between Aniero and Aetna because Aetna never obtained the SCA's written consent to the assignment.

Resisting this argument, Aetna contends that it secured the SCA's written consent to the assignment and that even if it failed to secure the SCA's written consent, the condition was excused through a unilateral waiver or substantial performance.

To evaluate these contentions, it is first necessary to resolve a dispute between the parties as to the proper interpretation of the term "assignment" as used in the Completion Agreement. *Black's Law Dictionary* 119 (6th ed.1990) defines "assignment" as "[a] transfer or making over to another of the whole of any property, real or personal, in possession or in action, or of any estate or right therein." *See also* Corbin, Assignment of Contract Rights, 74 U. Penn. L.Rev. 207 (1926). Aniero and General argue that "assignment" is used in this manner in the Completion Agreement; accordingly, they maintain that the parties intended to transfer contractual rights from Carlin and Aetna to Aniero. Aetna contends that the term "assignment" in the Completion Agreement instead means "delegation"—that is, a transfer of duties only.

In interpreting a written contract, a trial court's primary goal is to effectuate the intent of the parties as manifested by the language used in the contract. *See Seiden Assocs. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir.1992). As the Second Circuit has explained:

> When the question is the contract's proper construction, summary judgment may be granted when its words convey a definite and precise meaning absent any ambiguity. Where the language used is susceptible to differing interpretations, each of which may be said to be as reasonable as another, and where there is relevant extrinsic evidence of the parties' actual intent, the meaning of the words become an issue of fact and summary judgment is inappropriate . . . .

*Id.* Contract language is ambiguous if it is "capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages, and terminology as generally understood in the particular trade or business." *Eskimo Pie Corp. v. Whitelawn Dairies, Inc.*, 284 F.Supp. 987, 994 (S.D.N.Y.1968), quoted in *Walk–In Medical Centers, Inc. v. Breuer Capital Corp.*, 818 F.2d 260, 263 (2d Cir.1987). However, "[t]he language of a contract is not made ambiguous simply because the parties urge different interpretations. Nor does ambiguity exist where one party's view 'strain[s] the contract language beyond its reasonable and ordinary meaning.'" *Seiden Assocs. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir.1992), quoting *Bethlehem Steel Co. v. Turner Constr. Co.*, 2 N.Y.2d 456, 161 N.Y.S.2d 90, 141 N.E.2d 590 (Ct.App.1957).

Applying these standards, the language of ¶ 24 is unambiguous. "Assignment" is a legal term indicating a transfer of property or rights therein, and there is no reason to doubt that the parties intended to use it as such in ¶ 24. The first paragraph of Completion Agreement supports the conclusion that "assignment" in ¶ 24 was intended to embrace a transfer of rights. Paragraph one provides:

> *Assignment and Delegation.* Aetna, for itself and as attorney-in-fact for Carlin, hereby assigns and delegates to Aniero, and Aniero hereby assumes, any and all of the rights, title, interest, duties and

responsibilities of Aetna and Carlin that now exist or may hereafter arise in, to, or under the Aetna bond and the Construction Contract . . . .

This language demonstrates that the parties intended that Aetna and Carlin would transfer to Aniero not only their *duties* under the performance bond and the Carlin Contract, but also their *rights* under those agreements.[2] Moreover, the fact that the first paragraph refers to "[a]ssignment and [d]elegation" belies Aetna's suggestion that the term "assignment" is interchangeable with "delegation" in the agreement. I conclude that the term "assignment" in ¶ 24 of the Completion Agreement unambiguously conveys the definite and precise meaning captured in *Black's Law Dictionary.*

Having resolved this interpretive dispute, I must now consider whether Aetna secured the SCA's written consent to the assignment. According to the SCA's Principal Attorney Gregory Shaw, Aetna did not. Shaw states in his affidavit:

> The SCA had no involvement whatsoever in the selection of Aniero, or the negotiations between Aetna and Aniero. Contrary to Aniero's assertion, the SCA was neither asked to give its consent to any "assignment" of the Contract, nor did it give such consent.

Shaw Affidavit of April 18, 1997 at ¶ 5.

Aetna contends that a letter dated March 25, 1994 from the SCA's Senior Attorney Valerie D. Greaves to Aetna's representative Kevin W. Gillen, Esq. constitutes evidence to the contrary. I disagree. In the letter, Greaves informed Gillen that:

> The SCA Office of the Inspector General has placed Aniero Concrete on the SCA prequalification list which enables Aniero to bid and perform work on SCA projects. Consequently, the SCA has no objection to Aetna's selection of Aniero Concrete to complete Carlin Construction's obligation to modernize Morris High School.

The "prequalification list" referred to relates to statutory prequalification requirements for SCA projects. The SCA enabling statute, Public Authorities Law § 1734, and the prequalification guidelines, N.Y. Comp.Codes R. & Regs. tit. 21, § 9600, require that contractors interested in bidding on SCA construction projects apply for prequalification, by showing *inter alia* that they have the financial capacity, business integrity, experience and past performance record required by the SCA. In his affidavit, the SCA's Director of Operations Robert G. Berger explains the prequalification process as follows:

> Prequalification is neither an award nor a promise to award a contract. Nor does it create any contractual relationship. Indeed, some applicants may never work for the SCA; some may work as general contractors and some as subcontractors. Prequalification is merely an advanced-approval process mandated by the statute. Pursuant to SCA policy, all bidders for SCA projects and all subcontractors who do work worth $500,000 or more must be prequalified. Prequalifi-

---

**2.** The SCA maintains that Aetna could not assign rights under the Carlin Contract to Aniero because it did not have any. However, as completing surety, Aetna became subrogated to Carlin's rights under the Carlin contract. *See, e.g., Pearlman v. Reliance Ins. Co.,* 371 U.S. 132, 141, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962); *United States Fidelity & Guaranty Co. v. Triborough Bridge Authority,* 297 N.Y. 31, 74 N.E.2d 226 (Ct.App.1947). Moreover, according to the Completion Agreement, Aetna was "empowered by agreement with Carlin to act as Carlin's attorney-in-law for the purpose of assigning all or part of the [Carlin] Contract."

cation is totally separate and distinct from assignment of an SCA contract. Berger Affidavit of October 28, 1997 at ¶ 3.

Aetna contends that in addition to notifying Aniero of its prequalification, the March 25, 1994 letter provided the type of written consent required by ¶ 24 of the Completion Agreement, in that the SCA represented that it had "no objection to Aetna's selection of Aniero Concrete to complete Carlin Construction's obligation to modernize Morris High School." However, the March 25, 1994 letter does not utilize the term "assignment" or in any way acknowledge that privity is contemplated between the SCA and Aniero. Given this, the letter cannot be viewed as anything more than notification that (1) Aniero had been prequalified and (2) "[c]onsequently" the SCA had no objections based on the statutory prequalification standards to Aetna's delegation of its duties, as guarantor of Carlin's performance, to Aniero as completion contractor. As General notes in its brief, "there is a significant difference between 'prequalifying' a contractor according to SCA statutory standards and consenting, in writing, to the assignment of a $40 million construction contract and the creation of privity as

a result thereof." General's Reply Brief in Support of its First Cross–Motion at 4. Aetna has thus failed to raise a genuine issue of material fact as to whether the SCA consented in writing to the assignment.[3]

Even if the condition was not fulfilled, Aetna contends that either a unilateral waiver or substantial performance excused the condition. According to Aetna, "[u]nder the waiver doctrine, a party may by words or conduct waive a condition of a contract which was inserted exclusively for his benefit." Aetna's Brief in Opposition to the Cross–Motions of Aniero and General at 15. Aniero and General counter that a party cannot unilaterally waive an express condition precedent to the formation of a contract.

I need not resolve this question because Aetna has not shown and cannot show that ¶ 24 was inserted merely for its benefit. Aniero claims that it had a significant interest in the insertion of ¶ 24 because without the SCA's written consent, it would not have been able to seek relief directly against the SCA or exercise the rights assigned to it against the SCA. Indeed, § 109 of the New York General Municipal Law[4] mandates that public agencies annul

---

3. Aetna also cites a letter dated April 5, 1994 from Aetna's counsel Charles Lewis to SCA Senior Attorney Valerie Greaves as evidence that the SCA consented to the assignment. *See* Gillen's Affidavit in Opposition of October 20, 1997, Exh. B. In that letter, Lewis confirmed that Aniero would be Aetna's completion contractor on the project and advised the SCA that "Aetna, on its own behalf and on behalf of Carlin, has assigned to Aniero all of Carlin's obligations to complete Carlin's contract with the SCA on this project." After instructing the SCA to send project payments to Kevin W. Gillen, Lewis concluded: "Should the forgoing raise any questions on your behalf, please feel free to contact the undersigned or Mr. Gillen immediately." Aetna argues that by failing to respond to this letter, the SCA provided the consent required by ¶ 24 of the Completion Agreement. However, even if it were possible to construe Lew-

is' letter as a request for the SCA's consent and to interpret the SCA's silence as consent, the Completion Agreement explicitly required the SCA to consent *in writing*, which it evidently did not do.

4. Section 109 of the New York General Municipal Law provides:

1. A clause shall be inserted in all specifications or contracts hereafter made or awarded by any officer, board or agency of a political subdivision, or of any district therein, *prohibiting any contractor*, to whom any contract shall be let, granted or awarded, as required by law, from assigning, transferring, conveying, subletting or otherwise disposing of the same, or of his right, title, or interest therein, or his power to execute such contract, to any other person or corporation without

public contracts that have been assigned without the agencies' prior written consent. Section 109 also relieves public agencies of liability under such contracts. Because the consent requirement imposed by ¶ 24 provided an important benefit to Aniero as well as Aetna, I need not consider Aetna's unilateral waiver argument further.

Aetna also argues that its failure to obtain written consent should be excused through the doctrine of substantial performance. However, the New York Court of Appeals has held that "substantial performance is ordinarily not applicable to excuse the non-occurrence of an express condition precedent." *Oppenheimer & Co. v. Oppenheim, Appel,* 86 N.Y.2d 685, 636 N.Y.S.2d 734, 738, 660 N.E.2d 415 (Ct.App. 1995). According to the Court of Appeals, " 'if relief is to be had under [a] contract [when an express condition precedent has not occurred], it must be through excuse of the non-occurrence of the condition to avoid forfeiture.' " *Id.* at 738 (quoting Restatement [Second] of Contracts § 237, comment d, at 220). "Forfeiture" is defined as "the denial of compensation that results when the obligee loses [its] right to the agreed exchange after [it] has relied

substantially, as by preparation or performance on the expectation of that exchange." *Id.* at 738 n. 2 (quoting Restatement (Second) Contracts § 229, comment b). The Restatement summarizes the forfeiture doctrine as follows: "[t]o the extent that the non-occurrence of a condition would cause disproportionate forfeiture, a court may excuse the non-occurrence of that condition unless its occurrence was a material part of the agreed exchange." Restatement [Second] of Contracts § 229.

The forfeiture doctrine does not avail Aetna in this case for two reasons. First, as explained above, the SCA's written consent was a material part of the agreed exchange. Second, given the facts of this case, Aetna cannot claim that it will suffer a disproportionate forfeiture absent enforcement of the Completion Agreement. As General points out, "[a]ll Aetna has shown is that it stood by, silently, while Aniero performed, pursuant to what it believed to be a binding contract, solely due to misinformation provided to it by Aetna." General's Reply Brief in Support of its Cross–Motion at 12. Accordingly, I conclude that the Completion Agreement is invalid because Aetna failed to secure the

previous consent in writing of the officer, board or agency awarding the contract.

2. If any contractor, to whom any contract is let, granted or awarded, as required by law, by any officer, board or agency of a political subdivision, or of any district therein, shall without the previous written consent specified in subdivision one of this section, assign, transfer, convey, sublet, or otherwise dispose of such contract, his right, title or interest therein, or his power to execute such contract, to any other person or corporation, the officer, board or agency, which let, made, granted or awarded such contract shall revoke and annul such contract, and the political subdivision or district therein, as the case may be, and such officer, board

or agency shall be relieved and discharged from any all liability and obligations growing out of such contract to such contractor, and to the person or corporation to which such contract shall have been assigned, transferred, conveyed, sublet or otherwise disposed of, and such contractor, and his assignees, transferees or sublessees shall forfeit and lose all moneys, therefore earned under such contract, except so much as may be required to pay his employees. The provisions of this section shall not hinder, prevent or affect any assignment by any such contractor for the benefit of his creditors made pursuant to the laws of this state.

SCA's written consent to the assignment of rights to Aniero.

### 2. The SCA's Counterclaims against Aniero

The SCA's three counterclaims against Aniero allege: (1) that Aniero breached the Carlin Contract and thereby damaged the SCA, see SCA's Answer to Aniero's First Amended Complaint at 39–43, (2) that the SCA is a third-party beneficiary of the Completion Agreement, see id. at 43–44, and (3) that the SCA is entitled to liquidated damages against Aniero under the Carlin Contract, see id. at 44–45. Each of these claims relies on the validity of the Completion Agreement. Because the Completion Agreement is invalid, Aniero's motion is granted to the extent it seeks the dismissal of the SCA's counterclaims against Aniero.

### 3. Aetna's Claims against General

In its amended complaint, Aetna claims that General breached its obligations to Aetna under the performance bond that General executed with Aniero in connection with the Completion Agreement.[5] Aetna now moves for summary judgment declaring General's liability for these breaches. In its cross-motion for summary judgment, General argues that Aetna's claims against it should be dismissed because a surety bond is a nullity if the contract underlying the surety bond is void.

General has the upper hand in this dispute. The Appellate Division has held that "[a] surety bond attaches to the principal contract and must be construed in conjunction therewith, so that, if no underlying agreement ever came into existence, there is nothing to which the surety's obligation can attach and it is, therefore, a nullity." Hall & Co. v. Continental Casualty Co., 34 A.D.2d 1028, 310 N.Y.S.2d 950, 952 (3d Dep't 1970), aff'd, 30 N.Y.2d 517, 330 N.Y.S.2d 64, 280 N.E.2d 890 (Ct.App. 1972) (citations omitted); see also Walcutt v. Clevite Corp., 13 N.Y.2d 48, 241 N.Y.S.2d 834, 838, 191 N.E.2d 894 (Ct.App. 1963) (a guarantor is not liable unless the principal is bound); Pro–Specialties, Inc. v. Thomas Funding Corp., 812 F.2d 797, 799 (2d Cir.1987).[6] Because the Completion Agreement is invalid due to the absence of the SCA's written consent, the

---

5. On or about March 21, 1994, General issued Performance Bond No. SB0012503 on behalf of Aniero in favor of Aetna in connection with the Completion Agreement.

6. The only authority that Aetna cites in resisting General's argument is Board of Education v. Aetna Casualty & Surety, 453 F.2d 264 (2d Cir.1971). See Aetna's Reply Brief in Support of its Summary Judgment Motion Against General at 14. At issue in that case was a public works contract that had been entered into in violation of New York's competitive bidding statute, N.Y. Gen. Municipal Law § 103, and was consequently held void. Under the New York Court of Appeals' decision in Gerzof v. Sweeney, 22 N.Y.2d 297, 292 N.Y.S.2d 640, 239 N.E.2d 521 (Ct.App.1968), a special set of equitable principles governs the "remedy appropriate [in cases] where an illegal and void contract for public work, entered into in defiance of the competitive bid-

ding statute ..., has been performed in full on both sides." Id. at 645. These principles are designed to maintain "the practical effectiveness and vigor of the bidding statutes." Id. In a case related to Board of Education, involving the same contract, the district court applied Gerzof and concluded that the principal on the bond at issue in Board of Education might be liable to the school board for "damages which the Board has suffered as a direct consequence of the illegal contract," though it was not liable under the contract or in quantum meruit. Fabrizio & Martin, Inc. v. Board of Educ., 290 F.Supp. 945, 955–56 (S.D.N.Y. 1968). In the context of that ruling, the Second Circuit held in Board of Education that the illegality of the principal's construction contract did not necessarily absolve the surety of liability on all of the claims against it. In the case at bar, there is no allegation that the Completion Agreement was entered into in

performance bond issued by General as security for the Completion Agreement is also a nullity.

Although General did not raise the invalidity of the Completion Agreement as an affirmative defense prior to its cross-motion, I see no obstacle to awarding General summary judgment dismissing Aetna's claims on this basis. "Absent prejudice to the plaintiff, a defendant may raise an affirmative defense in a motion for summary judgment for the first time." *See Steinberg v. Columbia Pictures Indus., Inc.*, 663 F.Supp. 706, 715 (S.D.N.Y.1987) (citations and internal quotation marks omitted). No discovery has been conducted to date, and Aetna has yet to serve an answer to any of the pleadings filed by Aniero or General. Moreover, as General notes in its brief, "since SCA's lack of written consent to the assignment was particularly within Aetna's knowledge, Aetna can hardly claim that it is prejudiced by interposition of this affirmative defense at this juncture." General's Brief in Support of its First Cross–Motion at 7–8. Accordingly, I will grant (1) General's request for leave to amend its answer to Aetna's complaint *nunc pro tunc* to assert SCA's failure to consent to Aetna's attempted assignment of the Carlin Contract to Aniero as an affirmative defense and (2) General's cross-motion for summary judgment dismissing Aetna's complaint in its entirety based on the affirmative defense.[7] Aetna's motion for summary judgment on the issue of liability with respect to its causes of action against General is denied.

B. *Motions for Leave to Amend to Add Claims in Quantum Meruit*

Because the Completion Agreement is invalid, Aniero and General now claim that they are entitled to recover under the equitable doctrine of quantum meruit. In its cross-motion for summary judgment, Aniero requests a judgment declaring the liability of Aetna and the SCA in quantum meruit. In the alternative, Aniero requests that the Court construe its motion as one for leave to amend its amended complaint to include claims for quantum meruit against Aetna and the SCA based on the failure of the Completion Agreement. Similarly, in its cross-motion, General seeks leave to amend its first amended counterclaim against Aetna to include a claim in quantum meruit and to amend its amended third-party complaint to reflect the absence of written consent by the SCA.

For the reasons that follow, Aniero and General are hereby granted leave to amend their pleadings to include quantum meruit claims against Aetna, but Aniero's request to amend its pleading to include a quantum meruit claim against the SCA is denied without prejudice to a renewed request accompanied by a proposed second amended complaint.

A court can construe a summary judgment motion as a motion for leave to amend pursuant to Rule 15(a). *See, e.g., Block v. First Blood Assoc.*, 988 F.2d 344, 350 (2d Cir.1993). Rule 15(a) directs that leave to amend should be "freely given." The Second Circuit has held that a Rule 15(a) motion "should be denied only for such reasons as undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party." *Richardson Greenshields Securities, Inc. v. Lau*, 825 F.2d

---

violation of the competitive bidding statute and the Completion Agreement has not been performed in full on both sides. *Board of Education* is accordingly inapposite.

**7.** By granting General summary judgment on the cross-motion that it filed on August 8, 1997, I have rendered moot the cross-motion for summary judgment that General filed on January 8, 1998.

647, 653 n. 6 (2d Cir.1987); *see also Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) ("In the absence of any apparent or declared reason—such as undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.—the leave sought should, as the rules require, be 'freely given.' ").

Aetna and SCA resist the requests to amend on the grounds that amendment would be futile. "In addressing the proposed futility of an amendment, the proper inquiry is comparable to that required upon a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6)." *Rotblut v. 333 E. 66th St. Corp.*, 1996 WL 586353, *1 (S.D.N.Y.); *see also Health–Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir.1990) ("Although Fed.R.Civ.P. 15(a) provides that leave to amend should be given freely when justice so requires, where, as here, there is no merit in the proposed amendments, leave to amend should be denied."); *S.S. Silberblatt, Inc. v. East Harlem Pilot Block*, 608 F.2d 28, 42 (2d Cir.1979) ("A trial court does not abuse its discretion in denying leave to amend a complaint which even as amended would fail to state a cause of action.") (citation omitted); *Bank of New York v. Sasson*, 786 F.Supp. 349, 352 (S.D.N.Y.1992) (If "the claims would be subject to dismissal under Fed.R.Civ.P. 12(b)(6), the court should refuse to grant leave to amend rather than assent and

then await a motion to dismiss."). That is, the court must accept the facts alleged by the party seeking to amend as true and construe them in the light most favorable to that party. A claim may not be dismissed under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which could entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

Applying these standards, I conclude that amendment by Aniero and General to include quantum meruit claims against Aetna is not futile. Under New York law, "[t]he doctrine of quantum meruit allows a plaintiff to recover even where an express contract has been rescinded, is unenforceable or has been abrogated because it enforces the enriched party's implied promise to pay for benefits conferred by the plaintiff." *Eli Attia Architects v. Safra*, 1996 WL 480721 (S.D.N.Y.1996). A plaintiff may recover in quantum meruit upon showing: "(1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services." *Moors v. Hall*, 143 A.D.2d 336, 532 N.Y.S.2d 412, 414 (2d Dep't 1988), quoted in *Longo v. Shore & Reich, Ltd.*, 25 F.3d 94, 98 (2d Cir.1994). Aniero and General argue that they can make this showing because Aniero worked on the SCA project in good faith, Aetna accepted the services rendered, and Aniero expected compensation.[8] I conclude that

---

**8.** Aetna argues that amendment would nevertheless be futile because the Completion Agreement is valid, *see* Aetna's Brief in Opposition to Aniero's Cross–Motion at 17, but I have already rejected that contention. Aetna further suggests that General cannot raise a claim in quantum meruit because it did not furnish labor, material or services to the SCA project. *Id.* However, this argument lacks

merit as General seeks leave to interpose the quantum meruit claim in its capacity as assignee of Aniero's rights in connection with the SCA project pursuant to the General Indemnification Agreement executed by Aniero in favor of General. *See* General's Reply Brief in Support of its Cross–Motion at 15 n. 8.

there is merit in the proposed amendments, and accordingly grant Aniero and General leave to amend their pleadings to include quantum meruit claims against Aetna.[9]

As to Aniero's request for leave to amend to include a quantum meruit claim against the SCA, the question is closer. "[U]nder New York law, a subcontractor may recover from a landowner (and a sub-subcontractor from a general contractor), even when a separate contract exists between the subcontractor and general contractor, if the owner has agreed to pay the general contractor's debt or if the circumstances surrounding the parties' dealings can be found to have given rise to an obligation to pay." *U.S. East Telecommunications, Inc. v. U.S. West Communications Serv. Inc.*, 38 F.3d 1289, 1290 (2d Cir.1994); *see also EFCO Corp. v. U.W. Marx, Inc.*, 124 F.3d 394, 401–02 (2d Cir. 1997). The SCA contends that it would be futile for Aniero to amend its complaint to include a quantum meruit claim against the SCA because the SCA never agreed to pay Aetna's debt and Aniero cannot show that the SCA undertook any obligation to pay Aniero for its work. *See* SCA's Reply Brief in Support of its Summary Judgment Motion at 4–6. Aniero has not submitted a proposed second amended complaint with its motion papers. Without seeing Aniero's proposed amended pleading, I am unable to evaluate whether Aniero's quantum meruit claim could survive a motion to dismiss under Rule 12(b)(6). Accordingly, I will deny without prejudice Aniero's request for leave to amend to assert a quantum meruit claim against the SCA.[10] If Aniero wishes to press its request, it may renew its motion by submitting a proposed second amended complaint.

I also find it impossible to reach a determination as to liability in quantum meruit without first examining Aniero's second amended pleading. I therefore deny without prejudice Aniero's motion to the extent that it seeks a judgment of liability on Aniero's quantum meruit claims.

## IV SCA's Summary Judgment Motion on its Cross–Claims Against Aetna

The SCA has asserted two cross-claims against Aetna based on the theory that Aetna breached its obligations to the SCA under the performance bond executed between Aetna and Carlin.[11] The first cross-claim seeks damages for additional costs that the SCA incurred in completing the SCA project after Aetna failed to meet its obligations under the performance bond. The second cross-claim seeks liquidated damages against Aetna under the Carlin Contract for every day that the SCA project remained uncompleted after Carlin's contractual date of completion. The SCA now moves for an order granting summary judgment as to liability on these cross-claims and dismissing the affirmative defenses that Aetna has raised in its answer.

---

9. General's request for leave to amend its Amended Third Party Complaint to reflect the SCA's allegations that it did not consent to Aetna's purported assignment is also granted.

10. In its brief, Aniero suggests that it does not even require leave to amend because its amended complaint already asserts a claim in quantum meruit. *See* Aniero's Brief in Support of its Cross–Motion at 12. I disagree. To the extent that the amended complaint raises a claim in quantum meruit, it is in the context of a rescission of the Completion Agreement. If Aniero now wishes to press a claim for quantum meruit on the basis of the failure of a condition precedent, it must amend its complaint to so plead.

11. On June 5, 1992, Aetna issued Performance Bond No. 001SB100727628BCA on behalf of the SCA in connection with the Carlin Contract.

In response, Aetna asserts that pursuant to Rule 56(f), the SCA's motion is premature because Aetna requires additional discovery to respond to it properly. Rule 56(f) allows a party faced with a motion for summary judgment to request additional discovery. To oppose a motion on the basis of Rule 56(f), a party must file an affidavit detailing: (1) what facts are sought and how they are to be obtained; (2) how these facts are reasonably expected to create a genuine issue of material fact; (3) what efforts the affiant has made to obtain those facts; and (4) why these efforts were unsuccessful. *See Sage Realty Corp. v. Insurance Co. of North America*, 34 F.3d 124, 128 (2d Cir.1994).

Aetna has not met the second prong of this test. In support of its Rule 56(f) request, Aetna has submitted a skeletal affidavit from its counsel, Arthur N. Lambert, indicating that it requires discovery of the SCA, other parties, and non-parties pertaining to "among other things, Aniero's contentions that the SCA gave its approval and paid to Carlin substantial sums of money for: (a) items of work which were never performed ('Phantom Work') and not completed in the amounts set forth in Carlin's requisitions ('Overstated Work') and (b) materials which were not located and installed at the project ('Phantom Materials')." Affidavit of Arthur N. Lambert of January 8, 1998 at ¶ 3. Lambert's affidavit does not indicate how these facts are reasonably expected to create a genuine issue of material fact. Moreover, for the reasons that follow, none of the factual allegations made in Aetna's brief raise an issue of material fact as to liability. Accordingly, Aetna's Rule 56(f) is denied.

In support of its motion, the SCA has provided evidence to support the following: On June 5, 1992, Aetna issued a performance bond and an incorporated payment bond in the penal sum of $28,863,000 naming Aetna as surety, the SCA as obligee, and Carlin as principal. The performance bond provides as follows:

> The Surety, for value received, hereby stipulates and agrees, if requested to do so by the Authority, to fully perform and complete the work to be performed under the [Carlin Contract], pursuant to the terms, conditions, and covenants thereof, if for any cause, the Principal fails or neglects to so fully perform and complete such work. The Surety further agrees to commence such work of completion within twenty (20) days after written notice thereof from the Authority and to complete such work within such time as the Authority may fix.

In November 1993, Carlin abandoned its work and ceased performing its obligations under the Carlin Contract. On or about December 3, 1993, the SCA demanded that Aetna fully perform and complete the work to be performed under the Carlin Contract. Aetna retained Aniero in March 1994 to complete the Carlin Contract. Aniero began work, but abandoned the project without justification in December 1994. At that time, the project was only 70% complete. On or about December 29, 1994, the SCA advised Aetna of Aniero's unjustified abandonment and demanded that Aetna complete the work to be performed under the Carlin Contract. Since Aniero ceased work on the project, Aetna has not made any attempt to complete the project. In December 1994, the SCA entered into an agreement with Kreisler Borg Florman General Construction Company, Inc. to complete the project. The SCA has incurred substantial costs and expenses since Aniero abandoned the project.

On the basis of these facts, the SCA contends that it is entitled to summary judgment on its cross-claims. Aetna re-

sists the SCA's motion by asserting the following affirmative defenses: failure to state a claim, unclean hands, waiver, estoppel, failure to mitigate damages, and discharge. For the reasons that follow, none of these affirmative defenses serves to bar the entry of summary judgment as to liability.

Aetna's first affirmative defense is that the SCA has failed to state a claim. Because both of the SCA's cross-claims state a claim for breach of the performance bond, this affirmative defense will be dismissed.

Aetna next asserts an affirmative defense of unclean hands. Unclean hands is an equitable defense to equitable claims. *See, e.g., In re Gulf Oil/Cities Service Tender Litigation*, 725 F.Supp. 712, 742 (S.D.N.Y.1989); *Hasbro Bradley, Inc. v. Coopers & Lybrand*, 128 A.D.2d 218, 515 N.Y.S.2d 461, 463 (1st Dep't 1987); *Pecorella v. Greater Buffalo Press, Inc.*, 107 A.D.2d 1064, 486 N.Y.S.2d 562, 563 (4th Dep't 1985). Because the SCA seeks damages in an action at law, Aetna cannot avail itself of unclean hands as a defense.

Aetna next asserts that the SCA's claims are barred by waiver and estoppel. The only factual support that Aetna provides for these defenses is its allegation that the SCA overpaid Carlin. *See* Aetna's Brief in Opposition to the SCA's Motion at 20. A waiver is an intentional and voluntary relinquishment of a known right, *see Nassau Trust Co. v. Montrose Concrete Prods. Corp.*, 56 N.Y.2d 175, 451 N.Y.S.2d 663, 667–68, 436 N.E.2d 1265 (1982), and a waiver of contractual rights will not be inferred absent a clear intent to waive, *see Seven–Up Bottling Co. v. Pepsico, Inc.*, 686 F.Supp. 1015, 1023 (S.D.N.Y.1988). In this case, the SCA has not indicated an intent to waive its rights as third-party beneficiary to the performance bond. To the contrary, the SCA demanded that Aet-

na complete the project when Carlin defaulted and again when Aniero stopped work on the project. Aetna's waiver defense accordingly will be dismissed.

Estoppel is also unavailing as a defense to liability. "Equitable estoppel is 'imposed by law in the interest of fairness to prevent the enforcement of rights which would work fraud or injustice upon the person against whom enforcement is sought and who, in justifiable reliance upon the opposing party's words or conduct, has been misled into acting upon the belief that such enforcement would not be sought." *Readco, Inc. v. Marine Midland Bank*, 81 F.3d 295, 301 (2d Cir.1996), quoting *Nassau Trust Co. v. Montrose Concrete Prods. Corp.*, 56 N.Y.S.2d 175, 451 N.Y.S.2d 663, 436 N.E.2d 1265 (Ct.App. 1982). Under New York law, "[t]he elements of estoppel are with respect to the party estopped: (1) conduct which amounts to a false representation or concealment of material facts; (2) intention that such conduct will be acted upon by the other party; and (3) knowledge of the real facts. The party asserting estoppel must show with respect to himself: (1) lack of knowledge of the true facts; (2) reliance upon the conduct of the party estopped; and (3) a prejudicial change in his position." *Airco Alloys Div., Airco Inc. v. Niagara Mohawk Power Corp.*, 76 A.D.2d 68, 430 N.Y.S.2d 179, 187 (4th Dep't 1980), quoted in *International Minerals & Resources v. Pappas*, 96 F.3d 586, 593 (2d Cir.1996).

Neither Aetna's answer nor its brief explains why Aetna believes that the alleged overpayments give rise to an estoppel defense. Aetna never identifies any reliance on its part upon the SCA's alleged overpayments or any resulting prejudicial change in its position. Moreover, even if Aetna could properly raise an estoppel defense, such a defense would not bar the

entry of summary judgment as to Aetna's liability under the performance bond. Estoppel is defined as "a bar which precludes a person from questioning a fact which he has by his conduct induced another person to believe and to act on to his prejudice, or which has been admitted or determined under circumstances of solemnity, such as by a matter of record or by deed." *See* 57 N.Y. Jur.2d § 2; *Holm v. C.M.P. Sheet Metal, Inc.*, 89 A.D.2d 229, 455 N.Y.S.2d 429 (4th Dep't 1982) ("Th[e] doctrine [of equitable estoppel] precludes a party at law and in equity from denying or asserting the contrary of any material fact which he has induced a party to believe and to act in a particular manner."). The only fact that the alleged overpayments could possibly estop the SCA from questioning is whether Carlin performed all of the work for which it was paid. Even if the SCA were forced to concede that Carlin performed all of the work for which it was paid, Aetna would remain liable under the performance bond because at the time of Carlin's default there remained substantial project work for which Carlin had not been paid and it was Aetna's responsibility as surety to ensure that the project was completed. Accordingly, Aetna's estoppel defense does not preclude a judgment of liability.

Aetna next asserts that the SCA's cross-claims are barred because the SCA failed to mitigate damages. Failure to mitigate damages is properly considered in determining damages rather than liability. *See, e.g., Grassi v. New York Life Ins. Co.*, 1992 WL 249936, *11 (S.D.N.Y.1992); *Rivas Paniagua, Inc. v. World Airways, Inc.*, 673 F.Supp. 708, 715 (S.D.N.Y.1987). Accordingly, this affirmative defense does not bar the entry of summary judgment as to liability.

Aetna next seeks to raise a discharge defense based on alleged overpayments made by the SCA to Carlin. In its answer, Aetna alleges that the SCA and/or its agents approved and paid for work that Carlin had not completed, work that Carlin had not completed in the amounts set forth in Carlin's requisitions, and materials that Carlin had not installed at the project. *See* Aetna's Brief in Opposition to the SCA's Summary Judgment Motion at 5–6; Crevani Aff. ¶ 41(j)-(1).[12] On the basis of these allegations, Aetna contends that it is discharged from any further obligations on the performance bond because the SCA and/or its agents failed to duly perform their obligations under the Carlin Contract. *See* Aetna's Answer ¶¶ 28–30, 32–33, 34–36; Aetna's Brief in Opposition to the SCA's Summary Judgment Motion at 5–6. Alternatively, Aetna seeks to be discharged *pro tanto* to the extent that it was prejudiced by the diminishment and impairment of Aetna's security in the Car-

12. Even if it in fact approved and paid for non-existent materials, substandard work, or work that had not been completed, the SCA did not by doing so impair its right to demand that Carlin fulfill its contractual obligations. The Carlin Contract requires Carlin to perform its work to the SCA's satisfaction and empowers the SCA to reexamine finished work and to require the correction of defective or nonconforming work, even in cases where the SCA has already inspected, approved, or paid for such work. *See* Carlin Contract, General Conditions § 3.01A, 4.01(B), 6.03, 6.04, 6.06. With regard to Car-

lin's written requests for payment, the Carlin Contract states:

> Any signatures on behalf of the Authority shall signify either acceptance of the Request for Payment form or recommendation for payment. In no event shall such signature signify acceptance of partially completed work. Furthermore, any partial payment made shall not be construed as a waiver of the right of the Authority to require the fulfillment of all the terms of the Contract.

*Id.* § 16.01C; *see also* § 16.02.

contract balances. *See* Aetna's Answer ¶¶ 32, 35; Aetna's Brief in Opposition to the SCA's Summary Judgment Motion at 5–6.[13]

In raising these issues, Aetna seeks to invoke the defense of discharge of a surety by acts or omissions of the obligee. As a general rule, a material or prejudicial variation of the terms of a building contract discharges a surety who has guaranteed the contract. *See, e.g., American Bonding Co. v. Kelly,* 172 A.D. 437, 158 N.Y.S. 812 (2d Dep't 1916), aff'd, 225 N.Y. 641, 121 N.E. 852 (Ct.App.1919). In addition, "[a]ccording to the weight of authority in American jurisdictions, ... a material departure by the owner, without the consent of the surety, from the express requirements of a construction contract with regard to the times or amounts of payments made to the contractor, the retention of percentages, or the exaction of certain certificates, estimates, or receipted bills, operates to release or discharge the surety on the contractor's bond from liability to the owner, at least to the extent that such unauthorized payments result in injury or prejudice to the surety." 63 N.Y. Jur.2d, Guaranty and Suretyship § 574.

Citing these doctrines, Aetna insists that the overpayments that it has alleged should discharge its obligations under the bond entirely or *pro tanto.* The Carlin Contract provides that the SCA may make partial payments to Carlin based on approved estimates provided by Carlin of the work performed and materials stored on-site and off-site and specifies that the SCA is to retain five percent of the estimated amounts. *See* General Conditions § 16.01. Aetna suggests that its obligations should be discharged because the SCA allegedly

paid for work that was not performed and materials that were not located and installed at the project in violation of the Carlin Contract provisions.

The SCA responds convincingly that Aetna cannot avail itself of the discharge defense because it waived its right to do so in the performance bond. As the SCA points out, it is well settled that the discharge defense can be waived by the terms of a particular performance bond. *See, e.g.,* Restatement (3d) of Suretyship & Guaranty § 48(1) (1996); *Smith v. Molleson,* 148 N.Y. 241, 42 N.E. 669 (Ct.App. 1869); *Carrols Equities Corp. v. Villnave,* 57 A.D.2d 1044, 395 N.Y.S.2d 800 (4th Dep't 1977); *United States for Use & Benefit of H. & S. Ind. v. Rich,* 525 F.2d 760, 771 (6th Cir.1975); *M.H. Walker Realty Co. v. American Surety Co.,* 60 Utah 435, 211 P. 998, 1015 (1922); *Price v. Seibel,* 253 S.W. 212, 215 (Mo.Ct.App.1922); *Zang v. Hubbard Bldg. & Realty Co.,* 125 S.W. 85, 88 (Tex.Civ.App.1910); *Enterprise Hotel Co. v. Book,* 48 Or. 58, 85 P. 333, 335 (1906).

In this case, the performance bond could not be more explicit. It provides:

> The Surety, for value received, for itself and its successors and assigns, hereby stipulates and agrees that the obligation of said Surety and its bond shall in no way be impaired or affected by any extension of time, modification, omission, addition, or change in or to the said contract or the work to be performed thereunder, or by any payment thereunder before the time required therein, or by any waiver of any provisions, thereof, or by any assignment, subletting or other transfer thereof or of any work to be

---

13. Aetna raises these issues in its answer in what it terms its sixth, seventh, and eighth affirmative defenses. Aetna's brief makes clear, however, that all three rely on the same legal theory defense of discharge of a surety by acts or omissions of the obligee. I therefore treat the three defenses as one for purposes of this discussion.

performed or any moneys due or to become due thereunder . . . .

The performance bond also incorporates by reference the Carlin Contract, which in turn provides that "[n]o payment, final or otherwise, shall operate to release the Contractor or the Contractor's sureties from any obligations under this Contract o[r] the performance or labor and material bonds." Carlin Contract, General Conditions § 16.02. Because Aetna waived its right to complain that payments were not made at the time or in the manner stipulated in the contract, it is barred from asserting a discharge defense.

Aetna suggests that notwithstanding the waiver, it should be allowed to assert a discharge defense if it can show that the SCA did not make the alleged overpayments in good faith reliance on Carlin's representations as to the work that it had performed. *See* Aetna's Brief in Opposition to the SCA's Summary Judgment Motion at 16. Whether the SCA made the payments in good faith reliance on Carlin's estimates is immaterial to this issue. If Aetna had *not* explicitly waived the discharge defense in the bond, whether the SCA relied in good faith would be relevant because when a performance bond authorizes the obligee to make payments based on a certificate of progress, "a surety is not discharged by reason of an unauthorized payment made in good-faith reliance on [the certificate of progress]" even in the absence of an explicit waiver of the discharge defense in the bond. *Argonaut Ins. Co. v. Town of Cloverdale, Ind.,* 699 F.2d 417, 419 (7th Cir.1973); *see also British–American Tobacco Co. v. United States Fidelity & Guaranty Co.,* 177 A.D. 582, 164 N.Y.S. 406 (1st Dep't 1917). However, in a case such as this, where a surety explicitly agrees in the bond that prepayments by the obligee will not discharge its liability, the surety cannot later

be heard to complain that the obligee made a prepayment without relying in good faith on a certificate of progress. Accordingly, Aetna cannot raise an affirmative defense of discharge.

Finally, Aetna suggests for the first time in its opposition brief that the SCA's actions may have rendered Aetna's performance impossible. *See* Aetna's Brief in Opposition to the SCA's Summary Judgment Motion at 20 ("Further, Aniero asserts, *inter alia,* that its performance of the completion contract was rendered impossible by the SCA's aforesaid improper payments to Carlin, in the sum of at least $2,600,000, and the SCA's refusal to issue change orders for labor and materials which were necessary to complete the contract."). To the extent that Aetna seeks to base such a defense on the alleged overpayments, the defense is without merit because the mere fact that the completion of the project may have cost Aetna more than the balance of contract funds held by the SCA did not make performance impossible. To the extent that Aetna relies on other grounds, the defense is inadequately pled as it does not appear in Aetna's answer and receives only passing reference in Aetna's brief. *See id.*

The SCA's motion for summary judgment on its cross-claims is accordingly granted.

## IV. *Other Motions*

Aniero and General indicate in their briefs that they do not intend to press the claims asserted in Aniero's First Amended Complaint and General's First Amended Third–Party Complaint, given that the Completion Agreement is a nullity. *See, e.g.,* Aniero's Brief in Support of its Cross–Motion for Summary Judgment at 2 ("[T]he only remaining issues before the Court are the value of the work performed by Aniero, and whether Aniero has been

fairly compensated for its work by the beneficiaries of its labors—SCA and Aetna. All other issues and motions before the Court need not be considered because they arise out of, and assume the existence of, what has proved to be a phantom contract."); General's Memorandum in Support of its Cross–Motion for Summary Judgment at 2 ("[T]his Court need not address the issues relating to General's and Aniero's other claims against various defendants for fraud, breach of contract, discharge of surety obligation, etc. The Court need only consider Aniero's and General's claim against Aetna for *quantum meruit* recovery, SCA's claim against Aetna for failure to complete the project, and General's claims against indemnitors to recover defense costs."). There is therefore no need to consider the motions filed by various defendants seeking to dismiss the claims raised in the first amended pleadings filed by Aniero and General. Specifically, the following four motions are denied as moot:

(1) Aetna's motion to dismiss Aniero's First Amended Complaint and General's First Amended Counterclaim as against Aetna for failure to state a claim pursuant to Rule 12(b)(6) or for an order granting Aetna summary judgment on those claims pursuant to Rule 56, filed March 25, 1997;

(2) SCA's motion for an order granting summary judgment on Aniero's First Amended Complaint and General's First Amended Third–Party Complaint as against the SCA, as well as Hudson's cross-claims against SCA pursuant to Rule 56, filed April 24, 1997;

(3) motion filed by defendants Kreisler Borg Florman General Construction Company, Inc. ("KBF") and Kreisler Borg Florman General Construction Company, Inc. and Acrom Construction Services Co., Inc., a Joint Venture ("KBF/ACROM") for an order dismissing Aniero's First Amended Complaint and General's First Amended Third–Party Complaint as against KBF and KBF/ACROM, as well as Hudson's cross-claims against KBF and KBF/ACROM pursuant to Rule 12(c) and Rule 56, filed May 5, 1997; and

(4) motion filed by S.T. Hudson International Inc., David M. Pharis and S.T. Hudson seeking dismissal of Aniero's First Amended Complaint and General's First Amended Third–Party Complaint as against Hudson for failure to state a claim pursuant to Rule 12(b)(6) or an order granting Hudson summary judgment on those claims pursuant to Rule 56, filed May 6, 1997.

In addition, General's cross-motion for summary judgment filed January 8, 1998 is denied as moot for the reasons discussed in footnote 7 of this Opinion.

## VI. *Conclusion*

For the foregoing reasons, the following motions are decided by the Court in the manner summarized below:

Aniero's cross-motion is granted to the extent that it seeks dismissal of the SCA's counterclaims against Aniero.

General's cross-motion seeking dismissal of Aetna's amended complaint is granted, and Aetna's motion seeking summary judgment in its favor on the claims asserted against General in its amended complaint is denied.

Aniero and General are granted leave to amend their pleadings to include quantum meruit claims against Aetna, but Aniero's

request to amend its pleading to include a quantum meruit claim against the SCA and its request for judgment as to liability on its quantum meruit claims are denied without prejudice to renewed requests accompanied by a proposed second amended complaint.

The SCA's motion seeking partial summary judgment as to liability on its cross-claims against Aetna is granted.

All other motions are denied as moot.

If Aniero and General intend to file and serve amended pleadings in conformance with this Opinion, they are directed to do so on or before April 17, 1998.

The parties are directed to attend a status conference in Room 17C, 500 Pearl Street, at 2:30 p.m. on April 24, 1998.

It is SO ORDERED.